PEOPLE v BISHOP

Docket No. 47884. Submitted May 12, 1982, at Lansing.—Decided July 12, 1982.

Ernest R. Bishop was charged with second-degree murder and convicted of voluntary manslaughter in the Ingham Circuit Court, James T. Kallman, J. He appealed by leave granted, alleging error in the admission of a statement he made to police after having refused to answer questions until he had consulted with counsel. *Held:*

The statement was made to Detective Lawson. Prior to and subsequent to his refusal to answer questions until he had consulted with counsel, defendant asked specifically to speak to Detective Lawson. Prior to taking his statement, Detective Lawson advised defendant of his rights. Defendant's waiver of his right against self-incrimination was voluntary and knowingly and intelligently made.

Affirmed.

Criminal Law — Self-Incrimination — Police Interrogation.

An accused, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Peter D. Houk,* Prosecuting Attorney, *Janis L. Blough,* Chief Appellate Attorney, and *Susan K. Marshall,* Assistant Prosecuting Attorney, for the people.

*Terence R. Flanagan,* Assistant State Appellate Defender, for defendant on appeal.

Reference for Points in Headnote
21A Am Jur 2d, Criminal Law § 788.

Before: ALLEN, P.J., and CYNAR and C. J. FALA-
HEE,* JJ.

C. J. FALAHEE, J. Defendant was tried and con-
victed following a four-day bench trial of voluntary
manslaughter, MCL 750.321; MSA 28.553. He was
originally charged with second-degree murder,
MCL 750.317; MSA 28.549. On September 25,
1978, he was sentenced to a term of from 8 to 15
years imprisonment. Defendant was granted leave
to appeal to this Court after having once been
denied leave. The Court now considers the merits
of defendant's appeal.

Defendant originally claimed that the trial judge
should have disqualified himself from conducting
the bench trial after having presided over defen-
dant's *Walker*[1] hearing. He withdrew that conten-
tion at oral argument before this Court, acknowl-
edging that the issue was no longer viable because
of the recent Michigan Supreme Court case, *Peo-
ple v Cocuzza,* 413 Mich 78; 318 NW2d 465 (1982).

Defendant next contends that the trial court
erred in admitting his 10:30 p.m. statement made
to Detective Jerry Lawson of the Lansing Police
Department on August 19, 1977.

The testimony presented at the *Walker* hearing
indicates that defendant walked into the jail in the
afternoon of August 19, 1977, and asked whether
Lieutenant Herbert was working. He was advised
that Herbert was not present. The defendant then
stated his name, began putting his personal be-
longings on the desk, and related that he had just
killed his wife. The defendant was thereafter de-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87
(1965).

tained. Around 6:32 p.m. Captain Dan Duncan advised defendant of his *Miranda*[2] rights. He started to answer questions but stopped when he learned that he was being recorded. At that time he also asked for an attorney. The interview then ceased. There wasn't any attempt by the police to locate an attorney for defendant; however, Captain Duncan did ask defendant for the name of his attorney. Defendant had trouble remembering the name. He was offered a phone book if it would be helpful. Defendant, it appears, had earlier asked to speak to Detective Lawson as well as Detective Herbert and also again around 9:45 p.m. he asked to speak to Lawson. Neither was available. However, at about 10 p.m. Detective Lawson arrived at the police station. Captain Duncan then inquired of defendant whether he still wanted to see Detective Lawson and he advised that he did. It appears that the two had known each other a number of years. Lawson informed defendant that he had been to the crime scene and that his wife was dead. He advised defendant of his rights and defendant signed a "Recognition of Rights" form. He did not ask for an attorney or indicate any unwillingness to talk to Lawson. The two talked for about 25 to 30 minutes.

The court ruled the statement made to Detective Lawson admissible and any previous statements that day as inadmissible. Defendant contends the statement he made to Detective Lawson should not have been admitted into evidence. He claims that once he invoked his right to counsel earlier in the day he should not have been questioned thereafter.

At the beginning of the taped interview with defendant the following exchange occurred:

[2] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

"Today's date is August 19, 1977. This will be a statement taken from Ernie Bishop. Taking the statement will be Detective Jerry Lawson. Present during the course of the statement is Detective Dan Duncan. Statement will start at 10:35 p.m.

"*Q.* Ernie, uh, I show you a piece of paper mentioned as the Recognition of Rights. Did you just sign that?

"*A.* Yeh.

"*Q.* And uh, is the time on there?

"*A.* Yeh.

"*Q.* And that was taken on uh, August 19, 1977 at 10:30 p.m., right?

"*A.* Yeh.

"*Q.* And that's the time it is now?

"*A.* Yeh.

"*Q.* And you've seen several of these forms before here tonight, and before here tonight you didn't want to give a formal statement, is that correct?

"*A.* Yeh.

"*Q.* And uh, since that time you've decided that uh, you'd like to talk to us, matter of fact requested to talk to one of the officers and give a statement. Is that right?

"*A.* Yeh.

"*Q.* Well, Ernie, you're being held here at the Lansing Police Department on an open charge of murder. Uh, do you understand that?

"*A.* Yeh.

"*Q.* And that's a result of a shooting incident that took place over on Pine Street and you were arrested for that shooting and \* \* \*.

"*A.* I came in and turned myself in.

"*Q.* Yeh. And uh, yes, you *did* turn yourself *in,* and since that time, the time of the shooting, you have been informed that she in fact is dead. You understand that?

"*A.* Yeh."

There is no question in this case but that at around 6:30 p.m. defendant refused to answer any further questions until he had consulted with

counsel. Prior to that time he had specifically asked to speak to Detective Lawson who was not available. Later on, around 9:45 p.m., he again asked to speak to Detective Lawson. Lawson arrived around 10 p.m. and defendant stated he still wanted to talk to him after he was informed Lawson was present. The excerpts of the transcript recited above in this opinion indicate that he once again was advised of his rights and acknowledged that he requested to speak to Lawson.

In *Miranda v Arizona,* the Supreme Court held:

"If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have the opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent." *Id.,* 474.

This holding does not mean, however, that an individual cannot subsequently waive his right to counsel. Indeed, the Court stated:

"If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. * * *

"An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver." *Id.,* 475.

The rule governing waiver of the right to counsel was further elaborated upon in *Edwards v Ari-*

*zona,* 451 US 477, 484-485; 101 S Ct 1880; 68 L Ed 2d 378 (1981):

"We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police."

The Michigan Supreme Court has interpreted *Edwards* as not announcing new law but only clarifying existing rules of interrogation procedure. *People v Paintman,* 412 Mich 518, 530; 315 NW2d 418 (1982). Indeed, the Court stated:

"The *Edwards* Court did not hold that once an accused has asked for counsel the right cannot be abandoned without an attorney first being involved, nor do we. What we do hold is that the Fifth and Fourteenth Amendments require a clear demonstration of waiver." *Paintman, supra,* 528.

We are satisfied that the facts in the instant case satisfy the mandates of *Edwards, supra,* and *Paintman, supra.* The burden here was on the prosecution to demonstrate that defendant knowingly and intelligently waived his privilege against self-incrimination and his right to counsel at the 10:30 p.m. interview and that it was voluntary. It is quite clear from the beginning when defendant entered the police station that he wanted to talk to Lawson because they were longtime acquaintances. He again made the request at 9:45 p.m. The record recites that he once again was advised of his rights and desired to make a statement. The Michigan Supreme Court made it clear in *People v Paintman, supra,* 528, that a defendant having

once requested counsel could abandon that right later and be questioned. The burden, as previously stated, is on the prosecution to show, however, that the waiver not only was voluntary, but knowingly and intelligently made. A valid waiver cannot be established merely by showing that an accused who asked for an attorney responded to further custodial interrogation initiated by police officers. That is not the situation in this case. Defendant's request once again around 9:45 p.m. to talk to Lawson and having been advised of his rights again satisfies the prosecution's burden of showing in this case that his waiver was voluntary, and knowingly and intelligently made.

The fact that defendant was ill and in need of oxygen does not detract from this finding. The record discloses defendant was calm during the 10:30 p.m. interview and was not in physical difficulties.

Affirmed.