## PEOPLE v GARRISON

Docket No. 63330. Submitted March 2, 1983, at Grand Rapids.—
Decided September 13, 1983. Leave to appeal applied for.

Dale R. Garrison was convicted of first-degree criminal sexual
conduct and sentenced to life imprisonment, Gratiot Circuit
Court, Randy L. Tahvonen, J. The conviction was based on
charges that defendant had engaged in sexual intercourse with
his 13-year-old stepdaughter when the girl had spent a summer
with her mother and defendant pursuant to a court-ordered
extended visitation. Defendant appealed, alleging that his con-
fession was improperly admitted into evidence at trial, that the
court erred by denying a motion for a directed verdict on the
basis that the victim was not a member of defendant's house-
hold for purposes of the first-degree criminal sexual conduct
statute, that his sentence was not individualized, and that his
life sentence is subject to parole. *Held:*

1. Defendant neither moved for suppression of his confession
prior to trial nor objected at trial to admission of the confession
or any testimony relating to it. Therefore, appellate review is
precluded unless an error in admitting the evidence was deci-
sive to the outcome of the case. Here, defendant was fully
advised of his rights on two occasions, prior to his being
charged with the offense, when he admitted the allegations
against him. The confession was properly admitted into evi-
dence.

2. The victim was a member of defendant's "household" as
that term is used in the first-degree criminal sexual conduct
statute. The statute, in using the term "same household",
assumes a close and subordinating relationship that a child
experiences with a member of his or her family or with a

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*
   29 Am Jur 2d, Evidence § 583.
[2] 65 Am Jur 2d, Rape § 16.
[3] 21 Am Jur 2d, Criminal Law § 630.
   59 Am Jur 2d, Pardon and Parole §§ 84, 84.5.

coercive authority figure. The victim in this case was within the operation of the statute.

3. The trial court properly imposed an individualized sentence.

4. The issue of whether defendant's life sentence is subject to parole is raised prematurely, as defendant has not been aggrieved by having been denied parole. The Court of Appeals will not decide the issue under the circumstances.

Affirmed.

1. CRIMINAL LAW — EVIDENCE — CONFESSIONS.

The admission into evidence at trial of a defendant's confession may not be claimed to be error on appeal where no objection to its admission was made at trial nor motion to suppress the confession made prior to trial, unless the alleged error would have been decisive to the outcome of the case.

2. RAPE — FIRST-DEGREE CRIMINAL SEXUAL CONDUCT — MEMBER OF HOUSEHOLD.

The term "household", as used in the statute wherein sexual penetration with a person 13 to 16 years of age who is a member of the actor's household is classified as first-degree criminal sexual conduct, encompasses a family unit residing under one roof for any time other than a brief or chance visit and assumes a close and ongoing subordinating relationship that a child experiences with a member of his or her family or with a coercive authority figure; a child living in a home with her mother and stepfather for the summer months pursuant to court-ordered visitation is a member of "the same household" as the stepfather for purposes of the criminal sexual conduct statute (MCL 750.520b[1][b]; MSA 28.788[2][1][b]).

3. CRIMINAL LAW — PAROLE — LIFE SENTENCE.

A defendant's claim that his life sentence imposed for first-degree criminal sexual conduct is subject to parole is premature where the defendant has not yet been aggrieved by having been denied parole.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Mark A. Gates,* Prosecuting Attorney, and *Michael A. Nickerson,* Assistant Attorney General, for the people.

State Appellate Defender (by *Gail Rodwan),* for defendant on appeal.

Before:  D. E.  Holbrook,  Jr.,  P.J.,  and  D. F.
Walsh and J. C. Kinglsey,* JJ.

J. C. Kingsley, J. The defendant appeals as of
right his conviction and sentence of life imprison-
ment for first-degree criminal sexual conduct. MCL
750.520b(1)(b); MSA 28.788(2)(1)(b).

During the school year, the 13-year-old com-
plainant resided with her father and stepmother.
On the day school recessed for summer vacation,
she went to live with her mother and the defen-
dant in their home pursuant to court-ordered ex-
tended visitation over the summer months. The
defendant was charged with having had sexual
relations with his stepdaughter while the child
was living in the home with her mother and the
defendant pursuant to said court-ordered visita-
tion.

The complainant testified that the defendant
had sexual intercourse with her on a number of
occasions during the summer of 1981, commencing
approximately three weeks after she had been in
the defendant's home. She did not tell her mother
because she was fearful and because she was
afraid her mother would not believe her. There
was evidence also indicating that the complainant
was not completely at liberty while in the defen-
dant's home in the sense that she operated within
the rules and constraints of that household.

On the day she returned to her father's home
following summer visitation, she informed her
father and stepmother of the several instances
when the defendant forced himself on her. The
defendant first denied the allegations made by his
stepdaughter but later, following *Miranda*[1] warn-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

ings, admitted the allegations to both a polygraph operator and the investigating police officer.

After the prosecution rested its case, defense counsel moved for a directed verdict of acquittal as to the criminal sexual conduct allegation because the complainant was not a member of the same household as the defendant. The trial judge denied the motion. The defense rested and, after a few minutes of deliberation, the jury returned its guilty verdict.

Defendant first argues on appeal that his confession, made to police officials following a polygraph examination, was impermissibly admitted in evidence at trial. We disagree.

It should first be noted that no motion was made by defense counsel prior to trial to suppress the defendant's confession. *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965). Moreover, counsel did not object during the trial to the admission of the confession or any testimony relating to the defendant's admission. Absent a timely motion below, and barring constitutional implications, error may not be claimed on appeal. *People v Clopton*, 117 Mich App 673; 324 NW2d 128 (1982). In addition, recent decisions of this Court have held that appellate review is foreclosed unless the error would have been decisive to the outcome of the case. *People v Rowen*, 111 Mich App 76; 314 NW2d 526 (1981); *People v Hurd*, 102 Mich App 424; 301 NW2d 881 (1980).

Considering the matter as one of constitutional import, and to avoid any claim that the issue presented here was not reviewed, we find no error in the proceedings below. The United States Supreme Court has considered a similar claim recently in *Wyrick v Fields*, — US —; 103 S Ct 394; 74 L Ed 2d 214 (1982), a case involving the rape of

an 81-year-old woman. Finding that defendant Fields had waived his right to counsel knowingly and intelligently, the Supreme Court said the defendant's admission following polygraph interrogation of having intercourse with the victim was properly admitted into evidence, thereby rejecting essentially the same argument made here.

In the case at bar, defendant had not been charged with the offense at the time of the polygraph examination or the subsequent questioning by police officials. Prior to the polygraph examination, the defendant was given *Miranda* warnings. The examiner then asked defendant whether, if the examination showed that defendant was not being truthful, he would tell the truth. The defendant replied that he would, and when the examination indicated deceit, he was asked if he wanted to tell the examiner what really happened. He then admitted the acts alleged against him. The defendant then was taken to the sheriff's department where he was once again advised of his rights under *Miranda* and a statement was taken from him. The defendant admitted most of the allegations, including the fact that penetration had occurred.

We read nothing in the Michigan Supreme Court's opinion in *People v Paintman,* 412 Mich 518; 315 NW2d 418 (1982), or in recent Court of Appeals cases in *People v Bishop,* 117 Mich App 553; 324 NW2d 75 (1982), or *People v Pottruff,* 116 Mich App 367; 323 NW2d 402 (1982), which would lead us to a different result. Under the reasoning of *Wyrick, supra,* the admissions made by defendant were admissible. Defendant was given *Miranda* warnings prior to the test and again prior to his conversation with police officers following the test. Under the facts of this case, defendant's confession was properly admitted into evidence.

The principal argument made by the defendant is that the trial court improperly refused a defense motion for a directed verdict on the basis that the victim was not a member of the defendant's household as that term is used in MCL 750.520b(1)(b); MSA 28.788(2)(1)(b) because she resided with the defendant and her mother only during the summer months. The statute in question reads as follows:

"Sec. 520b. (1) A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:

\* \* \*

"(b) The other person is at least 13 but less than 16 years of age and the actor is a member of the same household as the victim, the actor is related to the victim by blood or affinity to the fourth degree to the victim, or the actor is in a position of authority over the victim and used this authority to coerce the victim to submit."

We agree with the trial court that the stated purpose of the criminal sexual conduct statute was to increase the penalty where the sexual penetration occurred in situations within a household. It is important to note that the crimes of incest, MCL 750.333; MSA 28.565, and carnal knowledge, MCL 750.520; MSA 28.788, were abolished by the Michigan Legislature with the enactment of the criminal sexual conduct statute, MCL 750.520a *et seq.;* MSA 28.788(1) *et seq.* The increased penalty imposed by the legislation is a reflection of the fact that people in the same household, those living together, bear a special relationship to one another. That relationship is specifically protected by

the increased penalty, to-wit: a possibility of life imprisonment.

In context, the legislative intent is to proscribe sexual penetration in those instances involving young persons and members of the same family group, bounded by the "household". Under prior law, incest, which was based on a familial relationship unrelated to age, carried a less severe penalty than did statutory rape. The first-degree criminal sexual conduct statute evidences a strong legislative intent to specify several situations in which the chance for sexual abuse of young persons is acute. The legislation unifies and makes clear those situations in which sexual penetration may result in a sentence of life imprisonment, thus eliminating confusion regarding possible penalties as they relate to age or consanguinity. We believe the term "household" has a fixed meaning in our society not readily susceptible of different interpretation. The length of residency or the permanency of residence has little to do with the meaning of the word as it is used in the statute. Rather, the term denotes more of what the Legislature intended as an all-inclusive word for a family unit residing under one roof for any time other than a brief or chance visit.[2] The "same household" provision of the statute assumes a close and ongoing

---

[2] Various dictionary definitions of the word "household" confirm that the ordinary meaning of the word denotes a family group, residing under one roof:

*Webster's Third New International Dictionary* (1970 ed), "those who dwell under the same roof and compose a family: a domestic establishment; *specif:* a social unit comprised of those living together in the same dwelling place."

*Webster's New Collegiate Dictionary* (1973 ed), "those who dwell under the same roof and compose a family; *also:* a social unit comprised of those living together in the same dwelling."

*American Heritage Dictionary* (1976 ed), "a domestic establishment including the members of a family and others living under the same roof."

subordinating relationship that a child experiences with a member of his or her family or with a coercive authority figure. We conclude that, based on the facts in this case, the statutory term properly embraces the victim herein. There was no error in the trial court's ruling.

Our review of the sentencing process and the life sentence imposed in this case leads us to the conclusion that no impropriety took place in sentencing. The record does not support the defendant's claim that the trial judge had concluded that a recidivist sex offender cannot be rehabilitated. The defendant received an individualized sentence for the well-articulated reasons set forth by the trial judge.[3]

---

[3] In passing sentence the trial court stated:

*"The Court:* The court has had an opportunity to review carefully the presentence report prepared by Mr. Collins and, of course, this court had the opportunity to sit through the jury trial in this case, and, in addition, the court has had some time to consider the case, to consider you, Mr. Garrison, and to consider your background, to consider the victim, to consider the community, and to consider the objectives or the purposes that a court seeks to achieve in imposing a sentence.

"There are a number of purposes to be served, and the weight those purposes are given varies. It varies with the offense, and it varies with the offender.

"There are situations in which the paramount consideration is rehabilitation, an effort by the court to utilize programs that are available to put the offender in a position where he will no longer engage in conduct putting him at odds with society as a whole.

"There are situations in which retribution is the principal function to be served in imposing a sentence, simply society, as it were, getting even with the one of its members who violated its rules.

"There is, in sentencing, concern for deterring—deterring the defendant from committing the same offense, deterring members of the public from committing similar offenses by demonstrating to them what the price of that conduct is.

"There is also to be served in sentencing, a function of simply isolating a defendant, simply removing him from the community to protect the community and its members, and those are all factors that have been considered by the court here in light of both the offense which the jury convicted you of here, and the offender—your background, your history and the statements you made to the court today, and I am satisfied that in this case, rehabilitation cannot be a

Finally, defendant argues that the life sentence imposed is subject to parole under voter-initiated legislation, MCL 791.233b; MSA 28.2303(3). Despite four cases recently decided in this Court, *People v Penn,* 102 Mich App 731; 302 NW2d 298 (1981); *People v Cohens,* 111 Mich App 788; 314 NW2d 756 (1981); *People v Anderson,* 112 Mich App 640; 317 NW2d 205 (1981), and *People v London Williams,* 117 Mich App 262; 323 NW2d 663 (1982), we are persuaded that defendant's plea to this Court is premature.

Dicta in the cases aforementioned might lead to the conclusion that parole is not possible where a defendant has been sentenced to a life term for any one of the offenses listed in Proposal B, MCL 791.233b; MSA 28.2303(3). However, defendant is not aggrieved until he has been denied parole. Thus, we find the defendant's claim here to be premature and do not decide it.

Affirmed.

---

principal goal for the court to achieve. I think it unrealistic for the court to anticipate that that could be done in this case.

"I think principally we have to at this juncture be concerned with the safety of society, the community, and in looking at that in light of the gravity of this offense and your background, I have determined that your request for probation is inappropriate. I have determined that there is one course that must be taken at this level, and unlike some, I take no particular joy in sending anyone to prison. I don't welcome that task, but I think here it is something that the court is obliged to do.

"You are sentenced to the custody of the Michigan Department of Corrections for the rest of your life."