## PEOPLE v RAY

Docket No. 82573. Submitted June 10, 1986, at Lansing. Decided November 4, 1986. Leave to appeal applied for.

Daniel E. Ray was convicted of arson of a dwelling by a jury in the Genesee Circuit Court, Donald R. Freeman, J. Defendant was sentenced to a prison term of from 160 to 240 months. Defendant appealed, claiming: (1) error in the court's denial of his pretrial motion to suppress evidence consisting of incriminating statements he had made to a state police trooper after the trooper conducted a polygraph examination of the defendant, and error in the admission into evidence of those statements at trial; (2) that he was denied his constitutional right to the presence of counsel at a photographic lineup conducted the day after the fire during which an eyewitness had identified defendant as the individual the witness saw flick a butane lighter on the patio of the premises shortly before the fire started; and (3) that the court abused its discretion in imposing a sentence which exceeded the recommendations of the Sentencing Guidelines.

The Court of Appeals *held:*

1. Notwithstanding a written waiver of rights executed by defendant, the record is unclear as to whether or not defendant had freely and voluntarily waived his right to remain silent and right to have his attorney present during the post-polygraph interrogation conducted by the trooper. The examining magistrate and the circuit judge who denied defendant's motion to suppress evidence relating to statements made by defendant during the post-polygraph interrogation erred in failing to conduct a *Walker* hearing to determine whether defendant did in fact waive the constitutional rights mentioned above.

2. There was sufficient evidence at the preliminary examination to support a bindover without defendant's alleged confession.

3. The trial judge properly admitted the photographic lineup

REFERENCES

Am Jur 2d, Criminal Law §§ 732 *et seq.*, 758-763.

Am Jur 2d, Evidence §§ 529, 531, 542-551, 555-557, 582.

See the annotations in the Index to Annotations under Attorney or Assistance of Attorney; Confessions and Admissions.

identification evidence at trial. Defendant was not entitled to the presence of counsel at the time the photographic lineup was conducted since defendant was not yet the clear focal point of the investigation at that time.

4. The trial judge explained his reasons from departing from the Sentencing Guidelines and the sentence imposed did not shock the judicial conscience of the Court of Appeals.

Remanded for a *Walker* hearing. Defendant's conviction shall be set aside and he shall have a new trial if the trial court determines defendant had not waived his rights mentioned above. However, defendant's conviction shall be affirmed if the trial court finds that defendant had waived his rights.

D. F. WALSH, J., dissented. He would hold that under the facts of this case neither the examining magistrate nor the circuit judge had a duty sua sponte to conduct a *Walker* hearing to determine the voluntariness of defendant's waiver of his right to remain silent or his Fifth or Sixth Amendment right to have counsel present during post-testing interrogation by the polygraph examiner. He would affirm.

OPINION OF THE COURT

1. CRIMINAL LAW — CONFESSIONS — VOLUNTARINESS OF CONFESSIONS.

A trial court or an examining magistrate generally is not required to address the question of the voluntariness of a confession sua sponte; however, an exception to that general rule exists in cases where a substantial question is raised by the factual situation itself; therefore, in a case where it is not clear whether or not the defendant had freely and voluntarily waived his right to remain silent and his right to counsel prior to making self-incriminating statements at an interrogation session that was immediately preceded by a polygraph examination conducted by the police interrogator, the trial court or examining magistrate must sua sponte conduct a hearing to determine the voluntariness of the defendant's confession (US Const, Ams V and VI; Const 1963, art 1, §§ 17 and 20).

2. CRIMINAL LAW — RIGHT TO COUNSEL — ADVERSARY PROCEEDINGS.

An accused has a right to the assistance of counsel following arraignment; such right to counsel exists whenever the police attempt to elicit incriminating statements from the accused and the right does not depend upon a request for counsel by the accused (US Const, Am VI).

3. CRIMINAL LAW — RIGHT TO COUNSEL — WAIVER.

A defendant may waive the right to assistance of counsel; where

the state seeks to introduce evidence obtained in the absence of counsel, it is incumbent upon the state to prove waiver by showing that the defendant intentionally and intelligently relinquished the right which he knew to be a right; the defendant must have been apprised of the nature of the protection an attorney could provide at the stage of the proceeding at issue; waiver is to be tested by a strict standard, applicable to a trial or to a crucial stage of pretrial procedure, and courts must indulge in every reasonable presumption against waiver (US Const, Am VI; Const 1963, art 1, § 20).

DISSENT BY D. F. WALSH, J.

4. CRIMINAL LAW — CONFESSIONS — VOLUNTARINESS OF CONFESSIONS — RIGHT TO COUNSEL.

*A trial court or an examining magistrate does not have to conduct a hearing to determine the voluntariness of a defendant's waiver of his right to remain silent or his Fifth or Sixth Amendment right to have counsel present during interrogation in a case where the defendant voluntarily submitted to a polygraph examination and was advised prior to the examination that (1) the examination consisted of a testing phase preceded and followed by a questioning phase, (2) he had a right to remain silent and that anything he said could be used against him at trial, and (3) the test and the questioning could not be conducted with his attorney present but that he could stop answering questions at any time during the test or during the questioning before or after and consult with his attorney (US Const, Ams V and VI).*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert E. Weiss,* Prosecuting Attorney, *Donald A. Kuebler,* Chief, Appellate Division, and *Mark Sandford,* Assistant Prosecuting Attorney, for the people.

*Terrance P. Sheehan,* for defendant on appeal.

Before: BEASLEY, P.J., and D. F. WALSH and HOOD, JJ.

BEASLEY, P.J. Defendant, Daniel Edward Ray, was convicted of arson of a dwelling, in violation of MCL 750.72; MSA 28.267. He was sentenced to

serve not less than 160 months nor more than 240 months in prison. Defendant appeals as of right.

On appeal, defendant raises three issues. First, defendant claims that it was error requiring reversal to deny his motion to suppress incriminating statements made by him to the polygraph examiner and to admit these statements into evidence at trial over objections by his attorney.

The charge against defendant arose out of a fire which started in an apartment formerly occupied by two of defendant's friends. The evidence presented at trial revealed that the fire had been intentionally set. The evidence also revealed that on the day preceding the fire, defendant had assisted his two friends in moving out of the apartment. The landlord of the apartment had evicted defendant's friends for nonpayment of rent.

A neighbor of defendant's friends testified that just before the fire started he observed a man flicking a butane lighter on the patio of the apartment where the fire started. The neighbor also testified that he had seen the man earlier in the day helping someone move out of the apartment. The neighbor went on to testify that he had reported his observations to the police and, in a photographic lineup conducted on the day following the fire, he had identified defendant as the man who had been flicking the lighter. As a vital part of his case, the prosecutor also offered the testimony of a state police sergeant that defendant had allegedly confessed to setting the fire, which testimony was admitted over the objection of defendant.

Defendant testified at trial. He admitted that he had been in the general area of the apartment building when the fire started, but he denied any involvement in starting the fire. Through his own testimony, defendant went on to assert an alibi

defense. He claimed that he and one of his friends who had just moved out of the apartment had been driving near the apartment building when they saw the fire. Defendant testified that after he and his friend saw the fire they went to the scene to watch. Defendant also denied that he had confessed.

As previously indicated, the first issue raised by defendant on appeal is that it was error to deny his motion to suppress the testimony of a police officer concerning allegedly incriminatory statements made by defendant. Defendant allegedly made the incriminatory statements following a polygraph examination conducted by Michigan State Police Sgt. Robin Bratton. Bratton testified both at the preliminary examination and at trial.

The record reveals that defendant had agreed to submit to the polygraph examination. Prior to the examination, defendant and his counsel, who accompanied defendant to the examination site, apparently were informed that the polygraph examination could not be conducted while defendant's counsel was in the room. While this may be better practice when a polygraph examination is conducted by a professional whose sole purpose is to form an opinion whether a person is telling the truth, when, as here, part of the purpose seemed to be to obtain an admission or statement from the person tested to use against him in his trial, it is difficult to see any good and valid reason for prohibiting counsel from being present, particularly after the polygraph instrument is detached.[1]

While his counsel was still present, the examiner, Sgt. Bratton, handed defendant a written "Polygraph Waiver" form which consisted of four sections: (1) a "Rights" section which is largely

---

[1] See *People v Barbara,* 400 Mich 352; 255 NW2d 171 (1977).

taken from the Polygraph Protection Act;[2] (2) a standard "*Miranda*[3] warning"; (3) a "Waiver" of his *Miranda* rights; and (4) an "Acknowledgment" which is essentially ambiguous. Bratton, who played the dual role of polygraph examiner and police detective, read the rights and warnings included in the form to defendant while his counsel was present and obtained an oral waiver from him. Defendant then signed the "Acknowledgment" included on the written waiver form, which provided:

1. I am willing to take a polygraph examination consisting of a testing phase and questioning, before and after.

2. I understand that I have the right to remain silent and that anything that I say during the testing phase and questioning, before or after, can be used against me in a court of law. I further understand that I may exercise my right to remain silent and stop answering questions at any time.

3. I understand that the polygraph test and the questioning, before and after, cannot be conducted with a lawyer actually present in the examination room, and I am willing to waive his/her presence. However, I fully understand that I have the right to talk with and have the assistance of a lawyer at any time during the polygraph test or questioning and that I may stop the test or questioning at any time and exercise that right.

4. No promises or threats have been made to me and no pressure of any kind has been used against me.

5. This statement has been read to me and I understand each of my rights and I am willing to waive these rights and take the polygraph examination at this time.

---

[2] MCL 37.201 *et seq.;* MSA 17.65(1) *et seq.*

[3] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

In this case, the prosecutor called Sgt. Bratton as a witness at the preliminary examination. Before she testified, defense counsel objected as follows:

> *Mr. Wheaton: [Defense Counsel]* Your Honor, if I might at this time, before the Sergeant comes in, I'm going to object to any testimony from this witness.
>
> *The Court:* Which witness?
>
> *Mr. Wheaton:* The one Robin Bratton, is it? And I'm kind of—this is kind of a delicate situation. There was a specific purpose for which she became involved with Mr. Ray which did not require her to do anything more than what was required for this specific purpose. She had no reason to talk with Mr. Ray before—or afterwards, and that is what the testimony is going to involve. Something that happened after, and I'm objecting to the testimony, and I'm doing it very carefully because I don't want to get into the area that I—we think may cause some problems but it did happen afterwards. She was aware that Mr. Ray had an attorney. She was aware I—because I had been out there before. She did not contact me and ask if I could talk to—she could talk to my witness, and I don't believe that she had any business in doing so, and the statements that are made I think are inadmissible, and I'm going to—
>
> *The Court:* I'm going—you've completely lost me. What's the witness' name?
>
> *Mr. Wheaton:* Sergeant Bratton.
>
> *The Court:* Okay, we're dealing with a state police officer?
>
> *Mr. Wheaton:* That's correct. She was in con—
>
> *The Court:* I take it that some time after this, she talked to Mr. Ray; is that what you're saying?
>
> *Mr. Wheaton:* That's correct, and that's what she's going to testify to as what, I guess question and response. I'm objecting to it because, number one, she had no business talking to him at this time, and I just don't think it's admissible. There

was—there's no reason for her to have been talk-
ing to Mr. Ray at this point. I don't know whether
it was question and answer or statements made or
whatever. I do not think the evidence is admissi-
ble, and I don't know how to be any more specific
without getting into an area that I don't think we
should get into but I—I will say that she should
not have been talking to him. She had no reason
to be. She was done with what she was doing, and
there was no reason to be—having any further
conversation with Mr. Ray. I'm objecting to any—
all of her testimony. Anything that she might
testify to.

*The Court:* I think it's a little premature, isn't
it? I'm going to—

*Mr. Wheaton:* Well, as—

*The Court:* I'm going to overrule the objection at
this time.

Sgt. Bratton then testified that she informed
defendant of his *Miranda* rights and that he
waived them. No mention was made on the record
of the preliminary examination of either the poly-
graph examination or the polygraph waiver that
defendant signed. When defense counsel asked the
officer: "What was the reason for Mr. Ray being
out there to talk to you?", the assistant prosecutor
successfully objected, presumably because the fact
of the polygraph examination was inadmissible.
After an in-chambers conference, defense counsel
withdrew his question and the officer was permit-
ted to testify as to defendant's alleged admissions.
No further objection was made. At the preliminary
examination, the only cross-examination of the
polygraph examiner-police officer related to what
defendant meant when he said "Right" in response
to the officer's accusations following the polygraph
examination. No *Walker*[4] hearing was held to

[4] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87
(1965).

determine the voluntariness of defendant's alleged statements.

After defendant was bound over to the circuit court for trial, defendant filed written motions to suppress defendant's so-called statement to Sgt. Bratton and to quash the information. These motions were heard by acting Circuit Judge Harry P. Newblatt on the transcript of the preliminary examination. No further evidence was offered. No *Walker* hearing was held. Although the prosecutor offered in evidence the polygraph waiver document, the acting circuit judge declined to receive it on the ground that he was limited to matters placed in evidence at the preliminary examination. Regarding the motion to suppress, he specifically indicated:

> Then, the query comes up as to Sergeant Britton's testimony—Bratton—Bratton—I believe—of statements alleged to have been made by Mr. Ray. Now, those statements were objected to strenuously by Mr. Wheaton; but he felt constrained to not explain the reasons for his objections; although in his motion, he testifies as to a period of time elapsing between the giving of Miranda and the statements being made. Nothing in the testimony, in fact, pinpoints a fatal passage of time between the Miranda warnings and the statement; and, consequently, through all the argument over the Sergeant's testimony, the reasons were never placed upon the record. However, at a later time in the hearing, inadvertently, the word polygraph was mentioned, at which time Mr. Perkins was carefully—that's the Prosecutor who handled the examination—was careful to state that he had never brought that before the Court—ah—and the word was used in the—in argument by Mr. Wheaton.
>
> There's no question that Sergeant Bratton gave the Miranda warnings; and unobjected to—nothing contra to the statement that Sergeant Bratton

made that Mr. Ray signed an acknowledgment of receiving Miranda.

During the course of the questioning, after Mr. Ray denied any involvement, according to Sergeant Bratton, in response to two questions, the answers were taken to indicate that, yes, he was involved in the setting of the fire.

Defense raises the issue that those statements might well be ambiguous. Perhaps so. I did not necessarily find them so. They were conjecture. . . .

Consequently, the Court finds that the lower court did not abuse its discretion in its finding and denies both the motions presented by the Defense.

At trial, before the jury, Sgt. Bratton testified that she gave defendant his *Miranda* warnings, and then the questioning took a different turn:

*Q. [Mr. Blanchard, Assistant Prosecutor]* How long did you talk with him that morning?
*A.* Several hours.
*Q.* Do you do background questioning in talking to him?
*A.* Yes, I did.
*Q.* Before you got into an interview with him?
*A.* Yes, I did.
*Q.* Did he make a statement to you in regards—

Defense counsel objected, and then:

*The Court:* What happened, what was the Court's ruling, it was allowed?
*Mr. Wheaton:* It was allowed.

The prosecutor then offered the polygraph waiver document, including the acknowledgment, but only in the absence of the jury on the separate record for purposes of voir dire regarding defendant's alleged statement. In the absence of the

jury, the trial judge sustained the ruling of the
acting circuit judge in denying the motion to sup-
press. No request was made for a *Walker* hearing
and none was offered.

Sgt. Bratton then testified that prior to hooking
defendant up to the lie detector, she obtained
background information from defendant and took
a statement from him, concerning which she took
notes. While testifying before the jury, Sgt. Brat-
ton did not reveal the fact that she had conducted
a polygraph examination, but referred to the en-
tire procedure only as an "interview." She said the
whole procedure, which included the polygraph
examination, took about two hours. She said that
immediately following the two-hour "interview,"
in which defendant consistently denied setting the
fire, she again confronted defendant about who
started the fire. Bratton went on to testify that in
confronting defendant following the polygraph
exam "interview," she told him that she did not
believe he had been telling the truth during the
examination. She said defendant merely re-
sponded, "right" to Bratton's assertion. Bratton
then told defendant that she believed that he and
his friend had started the fire. She said defendant
again responded, "right." Bratton concluded her
testimony by stating that she believed defendant's
responses of "right" indicated that he had agreed
with her accusations concerning the fire. Among
other things, she specifically testified:

> *Q.* Now, at the conclusion of the interview did
> you again confront him about who started the fire?
> *A.* Yes, I did.
> *Q.* Did you sort of ask him then in—Mr. Ray—a
> rhetorical question, that you thought he and Mr.
> Rod Anderson had set the fire to the apartment?
> *A.* Yes, I did state to him.

*Q.* What did he say to you, if anything, when you said that to him?

*A.* He said, "Right."

At trial, defendant testified and, in response, said he used the word "right," but not in a way to admit that he started the fire. Specifically, he said:

*Q. [Robin Wheaton, Defense Counsel]* Why did you say "Right"?

*A.* She kept telling me, insinuating for about approximately 23 hours that I had burnt that building and I kept telling her I didn't, and she just kept on and on.

During examination and cross-examination of Sgt. Bratton, neither side mentioned the fact of the lie-detector test, but both of necessity skirted around and close to it. On appeal, defendant claims that it was error under the facts and circumstances of this case to admit in evidence the exchange between defendant and the polygraph examiner immediately following the lie-detector test.

Resolution of this issue depends upon two constitutional provisions. First, is defendant's Fifth Amendment right[5] to be free from self-incrimination, specifically providing:

No person . . . shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law . . . .

Second, is defendant's Sixth Amendment right to counsel,[6] specifically providing:

[5] US Const, Am V; also see, Const 1963, art 1, § 17.

[6] US Const, Am VI; also see, Const 1963, art 1, § 20.

In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defence.

*People v Leonard*[7] involves a factual situation remarkably similar to that presented in the within case. In *Leonard,* the defendant took a polygraph examination conducted by the state police pursuant to a stipulation that neither the results of the polygraph "nor anyone's opinion as to the results of the polygraph examination" would be admissible in evidence at trial. Nevertheless, the prosecution sought to introduce a confession into evidence allegedly made to the polygraph examiner shortly after the defendant was detached from the polygraph. The trial court admitted the statement in evidence and the defendant was convicted. We reversed on the ground that, since the defendant had not knowingly and understandably waived his right to have his counsel present at the post-polygraph interrogation, his Sixth Amendment right to counsel was violated. The Supreme Court affirmed the Court of Appeals reversal, but the majority based its decision on the defendant's Fifth Amendment right to be free from self-incrimination, saying:

> However, we premise our agreement on the ground that the defendant did not knowingly waive his right to remain silent in view of the stipulation executed by the prosecution and the defense whereby the results of the polygraph examination and opinions drawn therefrom would not be admissible in evidence. [*Leonard, supra,* p 210.]

Consequently, we first review whether, under the *Leonard* decision, defendant's Fifth Amend-

[7] 421 Mich 207; 364 NW2d 625 (1984).

ment right to remain silent precludes admission in evidence of his post-polygraph statement. The prosecutor argues that *Leonard* may be distinguished from the within case because it contained the additional fact that the assistant prosecutor and the defense counsel specifically stipulated that the results of opinions regarding the polygraph would not be admissible in evidence.

In the within case, defendant, in the presence of his counsel, signed the polygraph waiver. Everyone knew that in Michigan the results of a polygraph examination are not admissible in evidence.[8] In spite of this fact, nothing in the "polygraph waiver" that defendant signed indicates that the fact of the giving of the polygraph and its result would not be admissible in evidence under the existing law. On the contrary, in the polygraph waiver, defendant agreed that anything he might say "during the testing phase and questioning before or after" could be used against him in court. We believe this necessarily created an ambiguity in the "acknowledgment" portion of the polygraph waiver signed by defendant as to whether any evidence would be admissible from the polygraph procedure.

In light of this ambiguity, both the magistrate at the preliminary examination and the acting circuit judge hearing the motion to suppress should have been alerted to the need for a *Walker* hearing to determine whether defendant freely and voluntarily waived his right to remain silent and to have his attorney present during the interrogation. It was clear error to assume that the giving of the lie-detector test could not be mentioned, much less considered, in deciding this vital constitutional issue. On the contrary, what defendant

---

[8] See *Barbara, supra.*

understood he was waiving when he took the polygraph examination was essential to resolution of whether defendant's constitutional rights to remain silent and to have counsel present during interrogation were violated.

In *People v Garrison*,[9] the defendant was given a polygraph examination before being charged in connection with a complaint made by a thirteen-year-old girl. Prior to the polygraph, the defendant was given *Miranda* warnings. When the polygraph examiner told the defendant he was not telling the truth and asked if he wanted to tell what really happened, the defendant admitted the charges made by the thirteen-year-old. The defendant was then taken to the sheriff's department where, after again being given *Miranda* warnings, he made a statement admitting that penetration had occurred. No motion was made before trial to suppress the statement. At trial, defense counsel did not object to admission in evidence of the confession. On appeal, after pointing out that the question had not been preserved and citing *Wyrick v Fields*,[10] we held that there was no error in admitting the confession into evidence. In *Wyrick,* the United States Supreme Court held the defendant had validly waived his Fifth Amendment right to counsel during a custodial interrogation, but it should be noted there was a persuasive dissent where it was emphasized that the defendant was never told he would be subject to a post-polygraph interrogation.

In *People v Catey*,[11] the defendant was questioned immediately following the arson-murder of

---

[9] 128 Mich App 640; 341 NW2d 170 (1983), lv den 419 Mich 853 (1984).

[10] 459 US 42; 103 S Ct 394; 74 L Ed 2d 214 (1982).

[11] 135 Mich App 714; 356 NW2d 241 (1984), lv den 422 Mich 940 (1985).

his landlady and denied involvement. Two days later, he agreed to take a polygraph examination which, after giving of *Miranda* warnings, was conducted over a three-hour period. Near the end of the test, the examiner told the defendant that he was not being truthful. The defendant then said he did not want to talk to the examiner any longer. Subsequently, another police sergeant, believing the defendant's reluctance to talk was directed only at the polygraph examiner, asked the defendant if he wanted to talk to him. The second officer gave the defendant his *Miranda* warnings and then told the defendant what he, the officer, believed had happened. The defendant then broke down, started to cry and soon after confessed. After being given his *Miranda* warnings again, the defendant made a second incriminating statement, which was taped and played at both the *Walker* hearing and at trial.

Prior to trial, a *Walker* hearing was held, after which the court found the defendant's statements were voluntarily made and admissible. The trial court apparently believed the testimony of the four police officers that the defendant never requested to speak to an attorney. On appeal, noting that the defendant had not unequivocally elected to remain silent, we held that neither the defendant's Fifth Amendment right to remain silent nor his Sixth Amendment right to counsel had been violated by admitting his statement in evidence.

Both the *Garrison* and *Catey* decisions underscore the fact that waivers of Fifth Amendment rights surrounding polygraph-examination procedures raise substantial and significant questions as to whether such waivers were voluntarily and understandingly made. These decisions certainly support our conclusion that the magistrate and the

acting circuit judge should have been alerted to the need for a *Walker* hearing.

In addition, we note that an essential part of the *Miranda* rights is the right to have an attorney *present* during interrogation. In fact, in *Miranda,* the United States Supreme Court said:

> At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent. [*Miranda, supra,* 384 US 474.]

The prosecution says that defendant and his counsel waived in writing in the polygraph waiver statement his constitutional right to have his counsel present. Defense counsel says the polygraph waiver was ambiguous and that the parties never understood defense counsel was waiving his right to be present at a post-polygraph interrogation.

In the within case, while there was no express stipulation as to what part of the polygraph examination transaction between defendant and the polygraph examiner was inadmissible, we believe that it was implicit that at least the fact that a polygraph examination was administered and the results of the polygraph examination would *not* be admissible in evidence. Arrayed against this is the broad language of the polygraph waiver that anything defendant might say "during the testing phase and questioning before or after" will be admissible in evidence. As pointed out above, we believe these two inherently conflicting considerations surrounding the admissibility of evidence from the polygraph procedure necessarily created an ambiguity as to whether defendant voluntarily

and understandingly waived his right to remain silent. We also believe that this ambiguity extends to whether defendant voluntarily and understandingly waived his Fifth Amendment right to counsel at this post-polygraph interrogation.

In *People v Hooks*,[12] we remanded for a *Walker* hearing, holding that the trial judge should have been alerted to the necessity for a *Walker* hearing to determine voluntariness where the defendant had been shot and his statement was made in a hospital while attached to life-support devices. We so held, even though no motion for a *Walker* hearing or to suppress the statement was made. In *Hooks*, Judge RILEY recognized that the general rule does not require a trial court to raise sua sponte the question of the voluntariness of a confession. However, she believed that an exception to the general rule exists where a substantial question of voluntariness is raised by the factual situation itself, and she held that the facts of *Hooks* brought it within the exception. Thus, in *Hooks*, we remanded for a *Walker* hearing.

Based on our discussion above, we conclude that such a remand is also required in the within case.

We find that, with respect to defendant's Fifth Amendment right to remain silent and to have his attorney present during interrogation, the burden of proof was on the prosecution to show a valid waiver by defendant. At the preliminary examination, the prosecutor failed to offer in evidence the polygraph waiver instrument which was a necessary ingredient of the claimed waiver. Nevertheless, the magistrate was obviously aware that a polygraph examination had been administered at or about the same time as the alleged confession. He should have been alerted to the necessity for a

[12] 112 Mich App 477; 316 NW2d 245 (1982), lv den 413 Mich 902 (1982).

*Walker* hearing. If a *Walker* hearing had been held, both defendant and defense counsel could have testified as to the understandings surrounding the polygraph examination.

Similarly, the acting circuit judge, when faced with a motion to quash and a motion to suppress the police officer's testimony regarding defendant's alleged confession, should have been alerted to the necessity for a *Walker* hearing with findings regarding the voluntariness and, more important, the extent of defendant's waiver. Before reaching results appropriate under these findings, we consider the second prong on appeal, namely, whether defendant validly waived his Sixth Amendment right to the assistance of counsel.

After defendant signed the waiver form in the presence of his counsel, defendant's counsel left the examination room and waited for defendant in the police station. The two-hour examination and the examiner's follow-up, accusatory questions occurred without further advising defendant of his constitutional rights. On appeal, defendant argues that it was clear error to find that he had made a voluntary, knowing and intelligent waiver of his "Sixth Amendment" right to counsel for purposes of the accusatory, follow-up questions posed by the polygraph examiner.[13]

In addressing this issue, we first note that this Court will reverse a trial judge's ruling on a suppression motion only if the ruling was clearly erroneous.[14] However, we also note that defendant's Sixth Amendment right to counsel had attached at the time of the polygraph examination, since he had previously been arraigned on the arson charge. In addition, defendant's Sixth

---

[13] US Const, Am VI; Const 1963, art 1, § 20.

[14] *People v United States Currency,* 148 Mich App 326, 329; 383 NW2d 633 (1986).

Amendment right to counsel applied at the polygraph examination, since this right exists whenever the police attempt to elicit incriminating statements. Furthermore, the Sixth Amendment right to counsel does not depend upon a request for counsel by the accused and courts will indulge in every reasonable presumption against waiver.[15]

In *People v Leonard, supra,* Justice WILLIAMS filed a separate opinion addressing this same Sixth Amendment right to counsel waiver issue. The other members of the *Leonard* Court did not address the Sixth Amendment right to counsel issue, but, as previously indicated, based reversal on the defendant's invalid waiver of his Fifth Amendment right against self-incrimination. In *Leonard,* there is no indication whether the other Justices agreed with Justice WILLIAMS' concurrence or not. For our purposes, we will assume they did not disagree with his basic test of voluntariness. After discussing the importance of the right to counsel, Justice WILLIAMS announced a basic test for determining whether a defendant has voluntarily, knowingly and intelligently waived his right to counsel in this situation:

> From our analysis then, we arrive at our rule for waiver where the right to counsel has been invoked and counsel has been consulted:
> 1. It is incumbent upon the state to prove waiver.
> 2. Waiver may be proved by showing:
> a) an *intentional* and *intelligent* relinquishment,
> b) of a *known* right.
> The defendant may waive the right of assistance of counsel if he knows what he is doing and his choice is made with his eyes open.
> 3. Defendant must be apprised of the nature of

---

[15] See *People v Bladel (After Remand),* 421 Mich 39, 52; 365 NW2d 56 (1984), aff'd — US —; 106 S Ct 1404; 89 L Ed 2d 631 (1986).

the protection which an attorney can provide at
this stage of the proceeding.

4. A waiver is tested by a strict standard.

5. Courts will indulge in every reasonable pre-
sumption against waiver.

6. The strict standard applies at trial or at a
crucial stage of pretrial procedure. [*Leonard, su-
pra,* pp 223-224.]

In the within case, defendant was represented
by counsel who was present when the polygraph
waiver instrument was signed. Consequently, it is
within that context that the magistrate and the
acting circuit judge should have applied the basic
test to determine whether defendant waived his
constitutional right to the *presence* of counsel
*during the post-polygraph* interrogation.

As previously indicated, the magistrate and the
acting circuit judge hearing the motion to suppress
should have been alerted to the necessity of a
*Walker* hearing before holding that defendant's
Fifth Amendment right to remain silent and Sixth
Amendment right to the presence of counsel at the
post-polygraph interrogation had been waived. In
this case it was error to fail to have a *Walker*
hearing, even though defendant did not specifically
request one. Consequently, we remand this case
for a full *Walker* hearing.

Since our review of the record indicates suffi-
cient evidence at the preliminary examination to
support a bindover without defendant's alleged
confession, we do not set aside the bindover.

In his second issue, defendant argues that he
was denied his constitutional right to the presence
of counsel at the photographic lineup conducted
the day after the fire for the witness who had
reported observing a man on the balcony of the
apartment just before the fire started. On appeal,

defendant admits that he was not in custody at the time of the photographic lineup. Defendant was also not "readily available" for a corporeal lineup at the time the photographic lineup was conducted, since he was not subject to legal compulsion to appear at a lineup. No warrant had been issued and, thus, the police had no means by which defendant could have been compelled to appear. In fact, at the time of the photographic lineup, probable cause for a warrant did not yet exist.[16]

Furthermore, defendant was not yet the clear focal point of the investigation which would require the presence of counsel at the photographic lineup. The record reveals that the police included a photo of defendant in the lineup only because he was a person who was known to have been in the area of the fire on the day of the fire.[17] In this factual situation, we conclude that defendant was not entitled to the presence of counsel at the time the photographic lineup was conducted. Since defendant fails to make any further assertions that the photographic lineup herein was improperly conducted, we find that it is unnecessary for the trial court, if a retrial is required, to conduct a hearing as to whether an independent basis for the identification has been established.[18] The trial judge properly admitted the photographic lineup identification evidence at trial and, if defendant is retried, such evidence will again be admissible.

In his third issue on appeal, defendant argues that, under *People v Coles*,[19] the sentence of not

---

[16] See *People v Harrison,* 138 Mich App 74, 76-77; 359 NW2d 256 (1984), lv den 421 Mich 864 (1985).

[17] See *People v Shue,* 145 Mich App 64, 76; 377 NW2d 839 (1985); *People v Hoerl,* 88 Mich App 693; 278 NW2d 721 (1979).

[18] *People v Carter,* 415 Mich 558; 330 NW2d 314 (1982).

[19] 417 Mich 523; 339 NW2d 440 (1983).

less than 160 months nor more than 240 months
was far in excess of the sentencing guidelines and
constituted an abuse of discretion. We disagree.
The trial judge realized his sentence exceeded the
guidelines and explained his reasons. Our judicial
conscience is not shocked by the sentence that was
imposed.

In summary, we find that, for the reasons indi-
cated in this opinion, it was error to fail to have a
*Walker* hearing for the purpose of ruling upon
whether defendant waived his Fifth Amendment
right to remain silent and have the presence of his
counsel and his Sixth Amendment right to have
the presence of counsel at the post-polygraph in-
terrogation. Consequently, we remand this case for
a *Walker* hearing. If the trial court finds that
there was no valid waiver and that, therefore,
defendant's confession should be suppressed, defen-
dant's conviction is set aside and he shall have a
new trial. However, if the trial court finds there
was a valid waiver, defendant's conviction is af-
firmed.

Remanded for proceedings consistent with this
opinion.

Hood, J., concurred.

D. F. Walsh, J. *(dissenting).* I must respectfully
dissent. I am not persuaded under the facts of this
case that either the examining magistrate or the
acting circuit judge had a duty sua sponte to
conduct a *Walker*[1] hearing to determine the volun-
tariness of defendant's waiver of his right to re-
main silent or his Fifth or Sixth Amendment right
to have counsel present during post-testing interro-
gation by the polygraph examiner.

---

[1] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87
(1965).

The defendant voluntarily agreed to submit to the polygraph examination. When he went to the state police post in Flint to take the exam, he was accompanied by his attorney. He was advised and acknowledged in writing while his attorney was present that he understood that the polygraph exam consisted of a testing phase preceded by a questioning phase and followed by a questioning phase, that he had a right to remain silent, and that anything he said during the testing phase *or* during the questioning before or after the testing phase could be used against him at trial. He was informed that the test and the questioning that preceded and followed it could not be conducted with his attorney present but that he could stop answering questions at any time during the test or during the questioning before or after and consult with his attorney.

All of this advice was given to the defendant while his attorney was present, and, while his attorney was still present, defendant acknowledged that he understood the advice and waived his right to remain silent and to have his attorney present during the test and during the questioning before and after. During all the time that defendant was being questioned by the polygraph examiner his attorney remained available at the state police post.

I find no error in the failure of the magistrate or the acting circuit judge sua sponte to conduct a *Walker* hearing nor do I find that the trial court's denial of the defendant's motion to suppress the incriminating statements was clearly erroneous.

I would affirm.