PEOPLE v PHILLIPS

Docket No. 228315. Submitted March 5, 2002, at Lansing. Decided April 30, 2002, at 9:05 A.M. Leave to appeal sought.

Keith R. Phillips was convicted by a jury in the Calhoun Circuit Court, Allen L. Garbrecht, J., of first- and second-degree criminal sexual conduct involving a fourteen-year-old victim. The defendant appealed, alleging several errors.

The Court of Appeals *held*:

1. Sufficient evidence was presented for a rational jury to find beyond a reasonable doubt that the defendant and the victim were members of the same household. There was sufficient evidence to support the conviction under MCL 750.520b(1)(b)(i).

2. The court did not err in not instructing the jury that the jurors had to find "the existence of a subordinating relationship with a coercive authority figure" in order to convict the defendant of first-degree criminal sexual conduct.

3. Although the defendant requested before his trial that he be given a polygraph test pursuant to MCL 776.21(5), he failed to raise the failure to be given the test until after the trial had commenced and jeopardy had attached and therefore forfeited his right to the test.

4. The court did not err in scoring the offense variables of the sentencing guidelines.

Affirmed.

CRIMINAL LAW — CRIMINAL SEXUAL CONDUCT — POLYGRAPH TESTS.

A defendant who allegedly has committed a crime under MCL 750.520b to 750.520e and 750.520g has a statutory right to be given a polygraph test if the defendant requests it; a defendant wishing to exercise the right to a polygraph test must make a motion for such a test to the court before trial; once a trial of the defendant regarding such a crime has commenced and jeopardy has attached, the defendant no longer has the statutory right to a polygraph test (MCL 776.21[5]).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *John A. Hallacy*, Pros-

ecuting Attorney, and *Jennifer Kay Clark*, Assistant Prosecuting Attorney, for the people.

*James Bonfiglio*, for the defendant on appeal.

Before: SAWYER, P.J., and MURPHY and HOEKSTRA, JJ.

PER CURIAM. Defendant appeals as of right from his jury-trial convictions of first- and second-degree criminal sexual conduct, MCL 750.520b(1)(b)(i), 750.520c(1)(b)(i). The trial court sentenced him to eight to thirty years' imprisonment for the first-degree conviction and 3½ to 15 years' imprisonment for the second-degree conviction. We affirm.

This case arises from an incident one afternoon where a police officer happened upon an automobile parked at the end of a two-track road near a river and found defendant and a fourteen-year-old girl in the back seat in a compromising position. According to the officer, both defendant and the victim had their pants and underwear off. After speaking with defendant and the victim, the officer arrested defendant.

Defendant first argues that the trial court erred in denying his motion for a directed verdict because the evidence presented was insufficient to support a conviction under MCL 750.520b(1)(b)(i). Specifically, defendant claims that the evidence was insufficient to show that he and the victim were members of the same household.

When determining whether sufficient evidence has been presented to sustain a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 515; 489 NW2d

748 (1992), amended 441 Mich 1201 (1992); *People v Godbold*, 230 Mich App 508, 522; 585 NW2d 13 (1998). In order to prove a defendant is guilty of first-degree criminal sexual conduct pursuant to the theory that the defendant and the victim were members of the same household, the prosecution must prove that the defendant

> engage[d] in sexual penetration with another person and [that] any of the following circumstances exists:
>
> *          *          *
>
> (b) That other person is at least 13 but less than 16 years of age and any of the following:
> (i) The actor is a member of the same household as the victim. [MCL 750.520b(1)(b)(i).]

In the present case, both parties rely on *People v Garrison*, 128 Mich App 640; 341 NW2d 170 (1983), to support their positions. The *Garrison* case involved allegations of sexual abuse by a thirteen-year-old victim. *Id.* at 642. This Court described the circumstances surrounding the crime as follows:

> During the school year, the 13-year-old complainant resided with her father and stepmother. On the day school recessed for summer vacation, she went to live with her mother and the defendant in their home pursuant to court-ordered extended visitation over the summer months. The defendant was charged with having had sexual relations with his stepdaughter while the child was living in the home with her mother and the defendant pursuant to said court-ordered visitation. [*Id.*]

Concluding that under these facts the victim could be considered a member of the defendant's "household," this Court stated:

> We believe the term "household" has a fixed meaning in our society not readily susceptible of different interpretation. The length of residency or the permanency of residence has little to do with the meaning of the word as it is used in the statute. Rather, the term denotes more of what the Legislature intended as an all-inclusive word for a family unit residing under one roof for any time other than a brief or chance visit. The "same household" provision of the statute assumes a close and ongoing subordinating relationship that a child experiences with a member of his or her family or with a coercive authority figure. [*Id.* at 646-647.]

Defendant now argues that the facts in the present case do not demonstrate "a close and ongoing subordinating relationship that a child experiences with a member of his or her family or with a coercive authority figure." *Id.* The prosecution argues that *Garrison* supports the trial court's decision in the present case because here, as in *Garrison*, there was evidence that although the victim and defendant were not related, they were members of the same household.

We begin by noting that the present case does not involve a "brief or chance visit" by the victim to defendant's home. Rather, the arresting officer testified that defendant told him that he and his wife were in the process of adopting the victim and that she had been living in their home for 4 or 4½ months. Similarly, while the victim alternately described her situation as living or staying with defendant and his wife, she testified that she spent the night there and that defendant wanted to adopt her. Thus, we are convinced that what took place was more than a visit to defendant's home.

Defendant nevertheless asserts that there was no evidence of either a "subordinating relationship" or that defendant was a "coercive authority figure" as,

defendant claims, is required by this Court's holding in *Garrison.* However, a close examination of the statement in *Garrison* dispels any notion that this Court meant to impose such a requirement. As defendant points out, the *Garrison* Court explained that "[t]he 'same household' provision of the statute *assumes* a close and ongoing subordinating relationship that a child experiences with a member of his or her family or with a coercive authority figure." *Garrison, supra* at 646-647 (emphasis supplied). According to *Random House Webster's College Dictionary* (2d ed, 1997), "assume" means "to take for granted or without proof."[1] Applying this meaning to the quote from *Garrison,* we conclude that this Court meant to indicate that proof of a "coercive authority figure" was not necessary precisely because the "household" requirement assumes such a link between the victim and the defendant by virtue of "the fact that people in the same household, those living together, bear a special relationship to one another." *Garrison, supra* at 645. Moreover, the first-degree criminal sexual conduct statute does not, by its plain language, require such proof. MCL 750.520b(1)(b)(i). Indeed, proof of coercion by an authority figure is an entirely separate manner by which to prove that a defendant committed first-degree criminal sexual conduct. MCL 750.520b(1)(b)(iii). Therefore, accepting defendant's argument would add an entirely new element to the statute while simultaneously compressing two distinct theories of first-degree criminal sexual conduct into one crime. Hence, we find defendant's argument

---

[1] "A court may establish the meaning of a term through a dictionary definition." *Fitch v State Farm Fire & Casualty Co,* 211 Mich App 468, 472; 536 NW2d 273 (1995), citing *Michigan Millers Mut Ins Co v Bronson Plating Co,* 445 Mich 558, 568; 519 NW2d 864 (1994).

to be without merit. Further, viewing the evidence in a light most favorable to the prosecution, sufficient evidence was presented for a rational jury to find beyond a reasonable doubt that defendant and the victim were members of the same household, and thus the trial court did not err in denying defendant's motion for a directed verdict.[2]

For the same reasons as noted above, we disagree with defendant's contention that the trial court improperly instructed the jury because the instructions did not indicate that the jurors had to find "the existence of a subordinating relationship with a coercive authority figure" in order to convict him of first-degree criminal sexual conduct. Instructing the jury that such proof was necessary would, in effect, add an element to the crime. Because the trial court's instructions to the jury "fairly presented the issues and sufficiently protected defendant's rights," *People v McCrady*, 244 Mich App 27, 30; 624 NW2d 761 (2000); *People v Brown*, 239 Mich App 735, 746; 610 NW2d 234 (2000), defendant is entitled to no relief on this basis.

Next, defendant argues that the trial court erred in denying defendant's motion for a new trial. The basis for this claim of error is that defendant was denied his statutory right to a polygraph examination pursuant to MCL 776.21(5).[3] Before trial, defendant de-

---

[2] To the extent that defendant asserts this same argument with regard to his second-degree criminal sexual conduct conviction, MCL 750.520c(1)(b)(i), this same analysis applies because that statute, relating to sexual contact rather than sexual penetration, contains the same language concerning the "household."

[3] MCL 776.21(5) provides: "A defendant who allegedly has committed a crime under sections 520b to 520e and 520g of Act No. 328 of the Public Acts of 1931 [MCL 750.520b to 750.520e and 750.520g], shall be given a polygraph examination or lie detector test if the defendant requests it."

manded a polygraph test and the court entered a stipulated order requiring that a test be administered. Two tests were scheduled before trial; evidently defendant canceled the first test, and the polygraph operator refused to administer the second scheduled test, apparently because defendant did not provide a medical release.[4] At the end of the trial, after the jury retired to deliberate, defendant objected for the first time that the polygraph test had not been given and demanded that defendant be given the test regardless of the outcome of the trial. Before sentencing, defendant filed a motion for a directed verdict or a new trial. In the motion, defendant maintained that the verdict was against the great weight of the evidence and was unjust and that defendant was denied a substantial right and due process of law because he did not have a polygraph test. At a hearing after sentencing, the trial court denied defendant's motion,[5] and an order to that effect was entered.

On appeal, defendant claims that because he did not have the requested statutorily provided polygraph test, he is entitled to such an examination followed by a new trial. Although no Michigan case has addressed this precise issue, we find this Court's decision in *People v Sterling*, 154 Mich App 223; 397 NW2d 182 (1986), instructive. In *Sterling*, this Court held that a defendant does not have a right to a polygraph test pursuant to MCL 776.21(5) after a convic-

---

[4] Defense counsel indicated to the court that apparently the polygraph operator refused to proceed without defendant's doctor's permission because of defendant's heart condition. The record demonstrates that defendant previously had a problem with his heart.

[5] The transcript of the hearing has not been produced. For the reasons set forth in the opinion, we find that the transcript is not necessary to the resolution of defendant's appeal.

tion, but before sentencing, because the wording of the statute applies only to a defendant who has "allegedly" violated a provision of the Michigan criminal sexual conduct code. *Sterling, supra* at 233-234. Because the defendant in *Sterling* had already been convicted when he requested the polygraph test, he no longer enjoyed the status of one who was only charged with the offense and, therefore, no longer had a statutory right to a polygraph test. *Id.*

Arguably, in the present case the fact that defendant demanded the test before trial, but failed to raise the failure to be given the test until after trial commenced, but before the jury rendered its verdict, places him in a slightly different posture than the defendant in the *Sterling* case. However, we find that like the defendant in *Sterling*, defendant's right to a polygraph test is forfeited. The purpose of affording individuals accused of criminal sexual conduct a right to a polygraph exam is to provide a means by which accused individuals can demonstrate their innocence, thereby obviating the necessity of a trial. We believe that once the trial has commenced and jeopardy has attached,[6] that purpose has been extinguished and a defendant no longer has a right to a polygraph test pursuant to MCL 776.21(5). If a defendant wishes to exercise his right to a polygraph test, he must make his motion to the court before trial. Otherwise, the person's guilt or innocence will be resolved at trial. Here, defendant failed to timely present the issue to the trial court and, consequently, he no longer had a statutory right to a polygraph test.

---

[6] See *People v Henry*, 248 Mich App 313, 318; 639 NW2d 285 (2001) (generally, jeopardy attaches when the jury is selected and sworn).

Further, we believe that for defendant to raise the issue with the trial court for the first time after the trial had begun is tantamount to building an appellate parachute into the record. See *People v Tate*, 244 Mich App 553, 558; 624 NW2d 524 (2001) (it is a well-established rule that counsel may not harbor error as an appellate parachute). If defendant had been acquitted, he would have had no reason to continue to pursue the request; however, defendant was convicted, and according to him, the conviction must be vacated. We simply will not countenance such chicanery. Regardless of the reason for which defendant failed to have a polygraph test, he is entitled to no relief because he failed to raise the issue before the commencement of trial.

Finally, defendant argues that the trial court erred in scoring certain offense variables of the legislative sentencing guidelines. Again, we disagree. This Court will uphold the trial court's scoring of the guidelines if there is evidence to support it. *People v Leversee*, 243 Mich App 337, 349; 622 NW2d 325 (2000).

Defendant first asserts that the trial court erred in scoring offense variable (OV) 8 at fifteen points. OV 8 is scored fifteen points when "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense." MCL 777.38(1)(a). In this case, the victim was taken in a car with only defendant present to what was described as a two-track road in an isolated area near a river and the car was facing away from the road. Under these circumstances, the trial court did not err in scoring fifteen points under OV 8 because there is evidence to support its ruling. See *People v Hack*, 219 Mich App 299, 313; 556 NW2d 187 (1996).

Defendant also contends that the trial court's score of ten points for OV 10, which is proper when "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status," MCL 777.40(1)(b), was error because "the record failed to indicate any manipulation by defendant or any exploitation of his status." We disagree. Defendant was sixty-seven years old at the time he engaged in sexual contact and penetration with the fourteen-year-old victim. The victim admittedly lived or stayed at defendant's home and defendant was in the process of adopting the victim when he abused her. This evidence clearly supports the trial court's scoring of OV 10.

Affirmed.