# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

　　　　　　Plaintiff-Appellee,

v

JOEL RAYMOND KALMBACH,

　　　　　　Defendant-Appellant.

UNPUBLISHED
January 20, 2015

No.　317978
Washtenaw Circuit Court
LC No.　12-001412-FC

Before:  SHAPIRO, P.J., and GLEICHER and RONAYNE KRAUSE, JJ.

PER CURIAM.

A jury convicted defendant of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(b)(*i*).  Defendant's conviction stemmed from his sexual penetration of the 14-year-old daughter of his longtime girlfriend and was based on the theory that the victim was a member of defendant's household.  Defendant complains that the statutory term "household" is unconstitutionally vague.  In the alternative, defendant contends that the trial court should have granted his motion for a new trial based on the lack of evidence that defendant and the victim were members of the same household.  The term "household" is capable of common understanding and the evidence placed defendant and the victim's relationship within that rubric.  We therefore affirm.

## I. BACKGROUND

Defendant and his girlfriend, RL, began a relationship in 2006.  For the next several years, both maintained their own homes but were frequently together, sometimes staying at defendant's residence and sometimes at RL's.  Each had joint custody of children from former relationships.  Defendant and RL worked together to raise their children.  The victim testified that she viewed defendant as a father figure and considered he and his children as part of her family.  RL also testified that she viewed the unit consisting of herself, defendant, and their children as a family.

The victim alleged that in June 2009, when she was 14 years old, RL had plans to go out with a friend.  Defendant and his children were at the home of a mutual friend, and the victim asked to stay there during her mother's absence.  The victim alleged that defendant offered her the use of his bed in the home's basement.  She claimed that she awoke in the middle of the night and discovered defendant in the bed with her.  The victim accused defendant of digitally penetrating her vagina.  The victim asserted that she immediately pulled away and went upstairs

to sleep with the rest of the children. Defendant initially denied that anything had happened, but later changed his story. He testified that he awoke in the middle of the night to find the victim in his bed attempting to initiate sexual relations. Defendant admitted that he touched the victim but claimed he believed the victim was her mother. The accusations did not come to light until January 2012, following a fight between the victim, defendant, and RL regarding improper computer use.

The prosecutor charged defendant with one count of CSC-I in violation of MCL 750.520b(1)(b)(*i*). That subsection provides that "[a] person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and . . . [t]hat other person is at least 13 but less than 16 years of age and . . . [t]he actor is a member of the same household as the victim." At trial, defendant asked the court to instruct the jury on the lesser included offense of CSC-III because it does not include as an element that the victim and perpetrator are members of the same household. The existence of a shared household was at issue in this case, defendant noted, and the jury should therefore be permitted to consider an offense absent the challenged element. The court agreed and gave that instruction.

Defendant later moved for a directed verdict on the CSC-I charge, citing a lack of evidence of a shared household. The trial court denied the motion and placed the issue before the jury. During deliberations, the jury asked whether there was a legal definition for the term "household" or whether they should rely upon "common knowledge." With the attorneys' approval, the court instructed the jury to use their common knowledge to define the term. The jury then convicted defendant of one count of CSC-I, not of the lesser included charge of CSC-III.

At sentencing, defendant revived his challenge to the evidentiary support for his conviction. He sought a new trial based on the sufficiency of the evidence supporting the shared household element of the CSC-I charge. The trial court denied that motion as well. This appeal followed.

## II. ANALYSIS

Defendant contends for the first time on appeal that the word "household" in MCL 750.520b(1)(b)(*i*) is unconstitutionally vague and fails to give notice regarding what behavior is prohibited. We must consider this as an "as-applied" challenge, attacking the statute as vague when applied to the facts before us. *Maynard v Cartwright*, 486 US 356, 361; 108 S Ct 1853; 100 L Ed 2d 372 (1988); *People v Vronko*, 228 Mich App 649, 652; 579 NW2d 138 (1998).

"To satisfy due process, 'a penal statute [must] define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement.' The void-for-vagueness doctrine embraces these requirements." *Skilling v United States*, 561 US 358, 402-403; 130 S Ct 2896; 177 L Ed 2d 619 (2010), quoting *Kolender v Lawson*, 461 US 352, 357; 103 S Ct 1855; 75 L Ed 2d 903 (1983). As described by this Court, a statute must "provide fair notice of the conduct proscribed," *Vronko*, 228 Mich App at 652, meaning that it gives "a person of ordinary intelligence a reasonable opportunity to know what is prohibited." *People v Noble*, 238 Mich App 647, 652; 608 NW2d 123 (1999). Further, a statute is deemed unconstitutionally

vague if it "does not contain adequate standards to guide those who are charged with its enforcement" or if it "impermissibly gives the trier of fact 'unstructured and unlimited discretion' in applying the law." *People v Douglas*, 295 Mich App 129, 138; 813 NW2d 337 (2011).

MCL 750.520b(1)(b)(*i*) defines the offense of CSC-I with sufficient clarity to avoid a void-for-vagueness challenge. The Legislature is not required to define every term in a statute. It is well established that a court may turn to dictionary definitions and the common understanding of words to fill in such blanks. See *People v Douglas*, 496 Mich 557, 575; 852 NW2d 587 (2014), quoting *Random House Webster's College Dictionary* (2001) ("Though the statute does not define the term 'incident,' it is commonly understood to mean 'an occurrence or event,' or 'a distinct piece of action, as in a story.'"); *People v McKinley*, 496 Mich 410, 419; 852 NW2d 770 (2014) (noting that a court may look to a "lay dictionary" to discern the meaning of undefined statutory terms). The term "household" is just the type of common word that can be understood without more specific definition by the Legislature.

Indeed, in *People v Garrison*, 128 Mich App 640, 646-647; 341 NW2d 170 (1983), this Court considered the definition of "household" within the CSC-I statute and held that it was a commonly understood term. In *Garrison*, this Court noted the purpose of the statute: to impose a heightened penalty on those who abuse the special relationship of sharing a household to perpetrate a sexual offense. *Id.* at 645-646. This Court continued:

> We believe the term "household" has a fixed meaning in our society not readily susceptible of different interpretation. The length of residency or the permanency of residence has little to do with the meaning of the word as it is used in the statute. Rather, the term denotes more of what the Legislature intended as an all-inclusive word for a family unit residing under one roof for any time other than a brief or chance visit. The "same household" provision of the statute assumes a close and ongoing subordinating relationship that a child experiences with a member of his or her family or with a coercive authority figure. [*Id.* at 646-647.]

The shared household relationship arose in *Garrison* where the victim lived with her mother and the defendant, the child's stepfather, only over summer break from school. *Id.* at 642.

In *People v Phillips*, 251 Mich App 100, 102; 649 NW2d 407 (2002), this Court relied upon *Garrison*'s definition of "household" in confronting a defendant's challenge to the sufficiency of the evidence supporting his CSC-I conviction. In *Phillips*, the defendant contended that the prosecution presented no evidence of "a close and ongoing subordinating relationship that a child experiences with a member of his or her family or with a coercive authority figure" as described in *Garrison*. *Id.* at 103-104. This Court held that such a relationship is assumed in the face of a shared household relationship and need not be proven. *Id.* at 104. A shared household relationship existed in *Phillips* because the victim was "staying" in the defendant's home because the defendant and his wife were in the process of adopting the child. The victim's presence was not merely "a 'brief or change visit.'" *Id.* at 103.

Similar to the analysis in *Garrison*, we discern no unconstitutional vagueness in the CSC-I statute. The term "household" is so common that a person of ordinary intelligence can read the

statute and reasonably understand what conduct is prohibited. As a common and ordinary word within the vocabulary and understanding of the general public, the Legislature was not required to include a statutory definition to guide law enforcement or give structure to jury deliberations. The jury's own question during deliberations highlights this very point. Tellingly, the jury did not indicate, "We do not understand the meaning of the term household," or ask, "What does the term household mean?" Rather, the jury expressed that the members could define the term using "common knowledge," but wanted to first ensure that there was no statutory definition that might alter their consideration.

Moreover, the term is not unconstitutionally vague as applied to the facts of this case, a consideration that also shows that sufficient evidence supported defendant's conviction. Defendant and RL were in a long-term romantic relationship. Because of her parents' custody arrangement and her mother's relationship with defendant, the victim spent approximately two to three weekends each month living under the same roof as defendant. The victim looked to defendant as a father figure. The victim described that she and her biological father were not close around the time of the incident and defendant "just kind of stepped up for a while." RL asserted that her daughters even called defendant "dad." RL testified "my girls and [defendant's] girls- -I mean, we were together and family." RL contended that this family unit had been "very close." They went hiking and river tubing as a family. Defendant was the only one who denied "operating as a family unit," because in his estimation, "in an actual family, you live together." However, even defendant admitted that they "did things as a family."

As further evidence of defendant sharing, at least part time, the same household as the victim, the victim testified that she did defendant's laundry along with the rest of the family's when she was assigned that chore. The victim indicated that she, her sister, and mother all left clothes at defendant's residence. However, RL denied that she and defendant lived together or kept clothes at each other's houses. Defendant also testified that everyone involved carried bags of belongings when visiting the other's residence and maintained no property outside their own home. Even assuming the parties lived out of suitcases while staying with each other, in the context of the remainder of the facts presented in this case, the parties nevertheless maintained a shared household relationship as that phrase is commonly understood. We now live in a mobile society. Many marriages end in divorce, after which the children are shuttled between houses carrying belongings in a suitcase. No one disputes that these children are part of the household of both parents. That the child does not permanently keep any clothes at one parent's home does not destroy the household relationship. This case merely represents a variation of that theme. Here, the victim travelled back and forth between the homes of her parents. While in her mother's custody, the victim also lived with her mother's longtime boyfriend. That defendant packed a bag to stay at RL's house or that the victim may have toted belongings to stay at defendant's home also does not destroy the shared household relationship.

Defendant also played a role in disciplining the victim, as evidenced by the events that led to the victim reporting the abuse. The victim testified that defendant had taken away her computer for creating a fake Facebook page to hide that she had a boyfriend. During the ensuing fight with her mother, the victim accused defendant of sexual abuse. RL and defendant acted as coparents in deciding the punishment for their children that day. This further supports the existence of a shared household.

From this evidence, a reasonable juror could determine that the parties resided in the same household, within the common understanding of that word. Defendant and the victim "resid[ed] under one roof for" periods of time that could be characterized as "other than . . . brief or chance visit[s]." *Garrison*, 128 Mich App at 646. This permitted the jury to assume "a close and ongoing subordinating relationship." *Id.* at 646-647. And the evidence of defendant's disciplinary and parenting role over the victim tended to support that assumption. Accordingly, we discern no grounds to find MCL 750.520b(1)(b)(*i*) void for vagueness as applied in this case.

We similarly reject defendant's contention that the trial court abused its discretion in denying his motion for a new trial. See *People v Miller*, 482 Mich 540, 544; 759 NW 2d 850 (2008). When a defendant seeks a new trial based on the inadequacy of the evidence, neither the trial court nor this Court may interfere, "absent exceptional circumstances," with the jury's role of assessing witness credibility. *People v Lemmon*, 456 Mich 625, 642; 576 NW2d 129 (1998). "Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." *Id.* at 647. A new trial in the face of a credibility contest is only permitted when "an innocent person had been found guilty, or . . . the evidence preponderates heavily against the verdict so that it would be a serious miscarriage of justice to permit the verdict to stand." *Id.*

In this case, no evidence supported a finding that a miscarriage of justice would result if the jury's verdict were allowed to stand. There was sufficient evidence for a jury to find that defendant and the victim were members of the same household, and defendant concedes that the other elements of the offense were established by the victim's testimony. Nothing in the statute implies that a victim cannot belong to multiple households. Accordingly, the trial court did not abuse its discretion in denying defendant's motion for a new trial.

We affirm.

/s/ Douglas B. Shapiro
/s/ Elizabeth L. Gleicher
/s/ Amy Ronayne Krause