# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

SHAWN CHRISTOPHER KREAGER,

Defendant-Appellant.

UNPUBLISHED
May 9, 2017

No. 332120
Charlevoix Circuit Court
LC No. 15-006812-FH

Before: SAWYER, P.J., and MURRAY and GLEICHER , JJ.

PER CURIAM.

A jury convicted defendant of three counts of second-degree criminal sexual conduct arising from sexual contact with his nine-year-old daughter during parenting time. Defendant contends that the circuit court violated his right to a fair and impartial jury by failing to give defense counsel an opportunity to challenge potential jurors for cause. Defendant also challenges the effectiveness of his court-appointed defense counsel. Both of these claims lack merit. We affirm.

## I. BACKGROUND

Defendant was convicted of sexually assaulting his daughter, HK. Two of the incidents occurred during a single overnight parenting time session. HK testified that she and defendant were on defendant's bed watching a movie when defendant offered her $5 to have sex with him. She refused and moved away from defendant. HK testified that defendant touched her bare bottom and then placed her hand on his penis. HK's mother, Samantha Gibson, testified that her daughter reported that defendant made her rub his penis "till white stuff came out." The third of defendant's convictions was based on HK's testimony that defendant had touched her bare bottom on various occasions in the past.

## II. JURY CHALLENGES

The trial court began voir dire in this case by personally questioning potential jurors. Based on the venire members' answers, the court removed several from the panel for cause. Each time a potential juror was excused, a replacement was called to the jury box. When the court completed its questions, the prosecutor interrogated the potential jurors, followed by defense counsel. Following defense counsel's questions, the court inquired whether either attorney would like to challenge any potential juror for cause. Defense counsel challenged one

-1-

juror on bias grounds, but the court rejected that removal for cause was required after additional questioning. The court asked the attorneys if they had any additional challenges for cause and both answered in the negative.

The trial court then allowed the attorneys to use peremptory challenges to excuse potential jurors from the panel. The prosecutor excused three venire members and defense counsel five. During this process, the court excused three more potential jurors for cause. The remaining venire members in the audience were reduced to four. Ultimately, both sides expressed that they required no more peremptory challenges and the court swore in the jury.

Defendant contends that the trial court violated his right to a fair and impartial trial because it failed to inquire after each excused potential juror was replaced whether the parties desired to raise any challenges for cause. This claim centers on the proper interpretation and application of a court rule, issues that we review de novo. *Acorn Investment Co v Mich Basic Prop Ins Ass'n*, 495 Mich 338, 348; 852 NW2d 22 (2014). When construing a court rule, the legal principles governing the interpretation and application of statutes are applicable. *In re KH*, 469 Mich 621, 628; 677 NW2d 800 (2004). The objective of the judiciary when interpreting a statute (or a court rule) is to discern and give effect to the intent of the drafters. *Whitman v City of Burton*, 493 Mich 303, 311; 831 NW2d 223 (2013). The best gauge of that intent is the plain language of the court rule. *Id*.

MCR 6.412 governs voir dire of potential jurors in criminal cases. MCR 6.412(C)(2) permits trial courts to choose whether to personally examine venire members or allow the attorneys to do so. However the court chooses to conduct voir dire, MCR 6.412(D)(2) provides for removal of potential jurors for cause: "If, after the examination of any juror, the court finds that a ground for challenging a juror for cause is present, the court on its own initiative should, or on motion of either party must, excuse the juror from the panel." MCR 6.412 also directs the trial court to follow the dictates relevant to civil trials. In this regard, MCR 2.511(D) provides that "[t]he parties may challenge jurors for cause, and the court shall rule on each challenge. A juror challenged for cause may be directed to answer questions pertinent to the inquiry." The rule then sets forth 12 situations in which removal for cause is warranted. When a juror is removed peremptorily or for cause, "another juror or other jurors must be selected and examined." MCR 2.511(G). "Such jurors are subject to challenges as are previously seated jurors." *Id*.

These rules do not require the court to repeatedly inquire whether the parties would like to challenge potential jurors for cause. In fact, the rules dictate no particular method by which trial courts must present an opportunity to raise for-cause challenges. Rather, the plain language of the court rules simply provide that the opportunity must be allowed and if a party raises a challenge for cause, the court must consider and rule upon it. The trial court complied with these mandates. The court twice expressly inquired whether the parties had any challenges for cause. Defense counsel raised one such challenge and the court ruled on it. Although the court did not specifically inquire later in voir dire whether defense counsel wished to raise additional for-cause challenges, the court did not prevent defense counsel from independently moving to challenge potential jurors. Accordingly, defendant cannot establish that the trial court violated the court rules or his right to impanel a fair and impartial jury.

Moreover, defendant has not identified any juror that was actually impaneled who should have been removed for cause. Even if the court had erred, defendant would be unable to establish any prejudice as a result.

## III. ASSISTANCE OF COUNSEL

Defendant raises several challenges to the performance of his appointed counsel. Defendant preserved his challenge by requesting a new trial in the lower court and the court conducted a hearing pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973). A claim of ineffective assistance of counsel is a mixed question of fact and constitutional law; we review the trial court's findings of fact for clear error and questions of constitutional law de novo. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012).

US Const, Am VI and Const 1963, art 1, § 20 protect a defendant's right to the assistance of counsel. "[T]he right to counsel is the right to effective assistance of counsel." *United States v Cronic*, 466 US 648, 653; 104 S Ct 2039; 80 L Ed 2d 657 (1984). Effective assistance is presumed and a defendant bears a heavy burden of proving otherwise. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). The defendant must overcome the presumption that the challenged action was sound trial strategy. *People v Tommolino*, 187 Mich App 14, 17; 466 NW2d 315 (1991). To prevail on an ineffective assistance claim, a defendant must establish that (1) his defense counsel's performance was objectively deficient and (2) the deficient performance prejudiced his defense. *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). To establish the necessary prejudice, the defendant must show that but for counsel's error, the result of the proceeding would have been different. *People v Johnson*, 451 Mich 115, 124; 545 NW2d 637 (1996).

A theme underlying defendant's specific challenges to counsel's performance is that counsel spent too little time with him prior to trial and therefore was unprepared to adequately defend the case. "The failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome." *People v Grant*, 470 Mich 477, 493; 684 NW2d 686 (2004). "In assessing the reasonableness of an attorney's investigation, . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins v Smith*, 539 US 510, 527; 123 S Ct 2527; 156 L Ed 2d 471 (2003). As stated in *Strickland*, 466 US at 690-691:

> [S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

In order to overcome the presumption of sound trial strategy, the defendant must show that trial counsel's failure to prepare for trial resulted in counsel's ignorance of valuable evidence that

would have substantially benefited the accused. *People v Bass*, 223 Mich App 241, 252; 581 NW2d 1 (1997), citing *People v Caballero*, 184 Mich App 636, 640, 642; 459 NW2d 80 (1990).

## A. ALIBI DEFENSE

At trial, defendant's girlfriend, Amy Richards, testified that she was with defendant and HK at all times during the weekend when the "movie-watching incident" occurred. She was "positive" of this fact because it was the same weekend as a local festival. Richards asserted that given her presence, these two charged offenses could not have taken place. Richards further indicated that she was with defendant and HK so often that she did not believe defendant could have improperly touched his daughter at any other time.

Following trial and on appeal, defendant contended that he was denied an alibi defense because defense counsel did not file a notice of alibi defense and did not endorse Richards as an alibi witness. At the *Ginther* hearing, counsel testified that neither defendant nor Richards informed him that Richards was a potential alibi witness. Rather, defendant had always agreed with HK's description that they sat on his bed to watch a movie together on the night in question, but denied that the sexual contact occurred. Richards did not tell counsel that she could provide an alibi until the morning of trial. The court credited counsel's testimony in this regard.

Even if counsel's failure to file a notice and specifically identify Richards as an alibi witness was deficient, defendant was not prejudiced as a result. Despite the lack of notice, Richards took the stand and provided alibi testimony without objection from the prosecutor. Richards' testimony was straightforward and easily identifiable to lay jurors as a potential alibi. Accordingly, the absence of an alibi instruction from the court was not fatal. The jury simply disbelieved Richards' story and convicted defendant as charged.

## B. ADVICE TO TESTIFY

Defendant contends that counsel should not have advised him to take the stand. Specifically, defendant asserts that counsel knew that defendant was uncertain whether Richards spent the night at his home on the day in question and therefore would present a version of events conflicting with a defense witness. Moreover, defendant insists that counsel should have known that the prosecutor would employ his alcohol use against him on cross-examination.

However, the decision whether to testify belongs to the criminal defendant, not his attorney. *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). Before defendant took the stand, the court excused the jury and thoroughly advised defendant of his rights. The court warned defendant that he would be subject to cross-examination by the prosecutor. And defendant was on notice of the topics that might arise during cross-examination. Defendant should have known that as he had never denied being alone with HK at the time two of charged contacts occurred, his testimony, in order to be truthful, would be inconsistent with that of Richards. Defendant also remembered that when Samantha Gibson confronted him with their daughter's accusation that he admitted he had been drinking. Despite this knowledge, defendant personally chose to testify. He cannot blame his attorney for this choice.

## C. CHARACTER WITNESSES

Defendant further argues that counsel did not investigate the list of character witnesses he provided prior to trial. These included Amy Richards, Jeremy Thayer, Aaron Robinson, John Gibson, Tanya Gibson, Anthony Gibson, Charles Curtis, Martin Evans, and Evans' fiancée Tiffany. As a general rule, "[d]ecisions regarding whether to call or question witnesses are presumed to be matters of trial strategy." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012).

"Under MRE 404(a)(1) a defendant may offer evidence that he or she has a character trait that makes it less likely that he or she committed the charged offense." *People v Roper*, 286 Mich App 77, 93; 777 NW2d 483 (2009). Here, contrary to defendant's challenge, defense counsel called Amy Richards as a witness and she testified that defendant was a loving father who would not have molested his daughter. Tanya Gibson testified during the case in chief and actually provided favorable character evidence even on direct. Counsel testified at the *Ginther* hearing that he interviewed Aaron Robinson and Robinson "actually said he would have nothing positive to say to help" defendant. Defendant could have called the other witnesses to testify at the *Ginther* hearing or provided the court with affidavits to outline their potential testimony, but failed to do so. As defendant has not established that these potential witnesses would have provided beneficial testimony, he cannot show that he was prejudiced by their absence.

## D. IMPEACHMENT OF SAMANTHA GIBSON

Defendant contends that counsel should have impeached Samantha Gibson with evidence of her prior criminal history. As a result, defendant asserts that counsel did not adequately develop his defense theory that Gibson put HK up to making these allegations.

MRE 609 provides for the use of a witness's criminal record for impeachment purposes as follows:

> (a) General rule. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall not be admitted unless the evidence has been elicited from the witness or established by public record during cross examination, and
>
> (1) the crime contained an element of dishonesty or false statement or
>
> (2) the crime contained an element of theft, and
>
> (A) the crime was punishable by imprisonment in excess of one year or death under the law under which the witness was convicted, and
>
> (B) the court determines that the evidence has significant probative value on the issue of credibility and, if the witness is the defendant in a criminal trial, the court further determines that the probative value of the evidence outweighs its prejudicial effect.

According to the Michigan Offender Tracking Information System, Gibson's past convictions entail only the possession of controlled substances. Counsel was given access to a Child Protective Services report prepared in the termination of parental rights case filed contemporaneously with this criminal action. The report listed additional misdemeanor theft and retail fraud offenses, as well as driving with a suspended license. None of these offenses would have been admissible under the evidentiary rule to impeach the witness. Counsel therefore was not ineffective in failing to impeach Gibson under MRE 609.

Defendant alternatively argues that counsel should have used Gibson's criminal record to establish her bias under MRE 608. That evidentiary rule provides:

(a) Opinion and reputation evidence of character. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations:

(1) the evidence may refer only to character for truthfulness or untruthfulness, and

(2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

(b) Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of the accused's or the witness' privilege against self-incrimination when examined with respect to matters which relate only to credibility.

Defendant fails to explain how Gibson's past incidents of substance abuse, shoplifting, and driving on a suspended license are in any way relevant under this court rule. Accordingly, he cannot establish that counsel was ineffective in this regard.

E. EXPERT TESTIMONY

Defendant claims that counsel should have considered presenting an expert witness "who could have evaluated [HK's] ability to relate the truth (or influences imposed on her)." However, the jury heard evidence that HK was subjected to two separate child forensic interviews. The parties who conducted those interviews were presented as witnesses at trial. Each explained the protocol of conducting interviews with child sexual abuse victims to protect against leading the child. Additional evidence in this vein would have been unnecessarily cumulative.

## F. POLYGRAPH EXAMINATION

Defendant contends that defense counsel should have advised him that he had the right to take a polygraph examination and that the results could not be used against him. MCL 776.21(5) provides that a defendant who is charged with criminal sexual conduct "shall be given a polygraph examination or lie detector test if the defendant requests it." Defendant implies that had counsel advised him of this right, he would have requested such a test and passed, and the charges would have been dismissed. See *People v Phillips*, 251 Mich App 100, 107; 649 NW2d 407 (2002) ("The purpose of affording individuals accused of criminal sexual conduct a right to a polygraph exam is to provide a means by which accused individuals can demonstrate their innocence, thereby obviating the necessity of a trial."). However, defendant can only speculate that he would have passed the polygraph examination. And even had defendant passed, nothing in the statute requires the prosecution to dismiss the charges against him. Accordingly, even if defense counsel should have requested a polygraph examination on defendant's behalf, the failure to do so was not prejudicial.

We affirm.

/s/ David H. Sawyer
/s/ Christopher M. Murray
/s/ Elizabeth L. Gleicher