# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JAMES LEE,

      Defendant-Appellant.

UNPUBLISHED
December 14, 2017

No. 334308
Wayne Circuit Court
LC No. 16-001002-01-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

VICTOR ASA-ALLEN SMITH,

      Defendant-Appellant.

No. 334626
Wayne Circuit Court
LC No. 16-002389-01-FC

---

Before: GLEICHER, P.J., and GADOLA and O'BRIEN, JJ.

PER CURIAM.

These consolidated appeals arise out of the sexual abuse of a minor by defendant Victor Asa-Allen Smith, who, at the time of the abuse, was living with his boyfriend, defendant James Lee. Lee was the victim's legal guardian at the time. In Docket No. 334308, Lee appeals as of right his jury trial conviction of second-degree child abuse, MCL 750.136b(3). Lee was sentenced to two years' probation. In Docket No. 334626, Smith appeals as of right his jury trial convictions of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(b)(*i*) (same household). Smith was sentenced to 60 to 180 months' imprisonment for each CSC-I conviction. We conclude that the prosecution failed to present sufficient evidence to support Lee's conviction of second-degree child abuse and thus vacate his conviction and sentence, but we affirm Smith's convictions and sentences.

-1-

# I. DOCKET NO. 334308

In Docket No. 334308, Lee argues that the prosecution failed to present sufficient evidence to support his second-degree child abuse conviction. Specifically, Lee contends that his failure to protect the victim from Smith is not the type of omission contemplated by the second-degree child abuse statute.[1]  Additionally, Lee argues that, aside from the specific omissions outlined in the statute, to be convicted of second-degree child abuse, a person must have committed an affirmative act, which he did not do. We agree.

We review de novo challenges to the sufficiency of the evidence. *People v Henry (After Remand)*, 305 Mich App 127, 142; 854 NW2d 114 (2014). When reviewing a sufficiency claim, we must view the evidence "in the light most favorable to the prosecutor [to] determine whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015) (quotation marks and citation omitted). Reviewing courts must draw all reasonable inferences and make all credibility choices in support of the jury's verdict. *Id*. A prosecutor "is not obligated to disprove every reasonable theory consistent with innocence to discharge its responsibility; it need only convince the jury in the face of whatever contradictory evidence the defendant may provide." *Id*. (quotation marks and citations omitted). Circumstantial evidence and the reasonable inferences arising from that evidence can constitute satisfactory proof of the crime. *Id*. "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Murphy*, ___ Mich App ___, ___; ___ NW2d ___ (2017) (Docket No. 331620); slip op at 2 (quotation marks and citations omitted). This Court will not interfere with the trier of fact's determinations regarding the credibility of witnesses. *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014).

Under MCL 750.136b(3), a person is guilty of second-degree child abuse if:

> (a) The person's omission causes serious physical harm or serious mental harm to a child or if the person's reckless act causes serious physical harm or serious mental harm to a child.

> (b) The person knowingly or intentionally commits an act likely to cause serious physical or mental harm to a child regardless of whether harm results.

> (c) The person knowingly or intentionally commits an act that is cruel to a child regardless of whether harm results.

The amended felony information in this case charged Lee with "knowingly or intentionally commit[ting] an act likely to cause serious physical or mental harm to a child by failing to protect [the victim] from criminal sexual conduct by an adult . . . ." Further, the jury was only instructed on the law as it pertains to Subdivision (b). Specifically, the trial judge

---

[1] See MCL 750.136b(1)(c), which defines an "omission" as "a willful failure to provide food, clothing, or shelter necessary for a child's welfare or willful abandonment of a child."

instructed the jury that "to prove this charge, the Prosecutor must prove . . . that the defendant, James Lee, knowingly or intentionally did an act likely to cause serious physical or mental harm to [the victim], regardless of whether such harm resulted." Accordingly, only Subdivision (b) applies here. The relevant inquiry is therefore whether the evidence, when viewed in a light most favorable to the prosecution, was sufficient to allow a rational jury to find that Lee knowingly or intentionally committed an act that was likely to cause serious physical or mental harm to the victim, regardless of whether the victim actually suffered that harm. We conclude that it was not.

Under Subdivision (b), a "person" is culpable of second-degree child abuse if he or she "knowingly or intentionally commits an act likely to cause serious physical or mental harm to a child regardless of whether harm results." MCL 750.136b(3)(b); *Murphy*, ___ Mich App at ___; slip op at 2. For the purpose of this statute, a "person" means "a child's parent or guardian or any other person who cares for, has custody of, or has authority over a child regardless of the length of time that a child is cared for, in the custody of, or subject to the authority of that person." MCL 750.136b(1)(d). As the legal guardian of the victim, Lee qualifies as a "person" for purposes of the second-degree child abuse statute. However, Lee's failure to prevent harm to the victim does not satisfy the requirements of MCL 750.136b(3)(b) because the statute requires a knowing or intentional act.

In *Murphy*, this Court defined an "act" as " '1. Something done or performed, esp. voluntarily; a deed' or '2. The process of doing or performing; an occurrence that results from a person's will being exerted on the external world.' " *Murphy*, ___Mich App at ___; slip op at 3, quoting *Black's Law Dictionary* (10th ed). Therefore, to have committed a knowing or intentional act, Lee must have knowingly or intentionally done something. With respect to second-degree child abuse, this Court has made it clear that "[s]imply failing to take an action does not constitute an act." *Murphy*, ___Mich App at ___; slip op at 3.

Our review of the record reveals that no evidence was presented to support a finding that Lee knowingly or intentionally acted to cause serious physical or mental harm to the victim, within the statutory definitions of serious physical or mental harm. See MCL 750.136b(1)(f) (defining "serious physical harm" as "any physical injury to a child that seriously impairs the child's health or physical well-being, including, but not limited to, brain damage, a skull or bone fracture, subdural hemorrhage or hematoma, dislocation, sprain, internal injury, poisoning, burn or scald, or severe cut"). See also MCL 750.136b(1)(g) (defining "serious mental harm" as "an injury to a child's mental condition or welfare that is not necessarily permanent but results in visibly demonstrable manifestations of a substantial disorder of thought or mood which significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life").

When viewed in a light most favorable to the prosecution, the evidence presented at trial showed that Lee stepped in as the victim's legal guardian when his own parents could not care for him. By all accounts, Lee provided the victim with food and a place to live. Each day, Lee ensured that the victim made it to school via taxicab. At trial, Smith testified that when he moved into Lee's apartment, the victim was upset because of the close relationship between the victim and Lee. The victim disclosed to Lee on two occasions that Smith had sexual intercourse with him. Twice, Lee spoke with Smith and indicated that the contact was inappropriate. After

-3-

the victim disclosed the incidents to Lee, Lee told the victim, "I got it." However, when Smith continued living in the home following the second incident, the victim told Lee's father, Shawn Bryant, about the abuse and Bryant contacted the authorities.

The prosecution's position at trial was that Lee should have either removed the victim from the home or asked Smith to leave after the first incident of sexual intercourse between Smith and the victim. Although the prosecution's position is logical, Lee's failure to act does not give rise to criminal culpability for second-degree child abuse under MCL 750.136b(3)(b). No evidence was presented showing that Lee knowingly or intentionally committed an affirmative act that seriously impaired the victim's health or physical well-being within the statutory definition. See MCL 750.136b(1)(f). Similarly, no evidence was presented showing that Lee knowingly or intentionally committed an affirmative act that seriously affected the victim's mental health within the statutory definition. See MCL 750.136b(1)(g). Accordingly, the prosecution failed to present sufficient evidence from which a rational jury could have found Lee guilty beyond a reasonable doubt of second-degree child abuse under MCL 750.136b(3)(b). We therefore vacate Lee's second-degree child abuse conviction and sentence.

## II. DOCKET NO. 334626

### A. SUFFICIENCY OF THE EVIDENCE

In Docket No. 334626, Smith first argues that the prosecution failed to present sufficient evidence from which a rational trier of fact could have found him guilty beyond a reasonable doubt of two counts of CSC-I. Specifically, Smith argues that he and the victim were not members of the same household for purposes of MCL 750.520b(1)(b)(*i*). We disagree.

Smith was convicted of two counts of CSC-I under MCL 750.520b(1)(b)(*i*), which provides that a "person is guilty of criminal sexual conduct in the first degree if he . . . engages in sexual penetration with another person," the other person is "at least 13 but less than 16 years of age," and "[t]he actor is a member of the same household as the victim." In the context of MCL 750.520b(1)(b)(*i*), this Court has previously said that

> the term "household" has a fixed meaning in our society not readily susceptible of different interpretation. The length of residency or the permanency of residence has little to do with the meaning of the word as it is used in the statute. Rather, the term denotes more of what the Legislature intended as an all-inclusive word for a family unit residing under one roof for any time other than a brief or chance visit. [*People v Phillips*, 251 Mich App 100, 103; 649 NW2d 407 (2002) (citation omitted).]

In this case, Smith and the victim were operating as a "family unit" for longer than a "brief or chance visit" when Smith twice engaged in sexual intercourse with the victim. Smith and Lee were in a dating relationship, and Lee allowed Smith to move in while Smith was recovering from a MRSA infection so that Smith could get back on his feet. Smith testified that, before moving in, he was aware that the victim lived with Lee and that Lee was the victim's legal guardian. Smith moved in at the end of January 2015, and by mid-March, was still living with Lee and the victim. Smith and Lee shared a bedroom, and Smith testified that while he was

living with Lee, he purchased groceries and once helped the victim with his homework. Viewing this evidence in a light most favorable to the prosecution, a rational trier of fact could find beyond a reasonable doubt that Smith and the victim were members of the same household when Smith twice engaged in sexual intercourse with the victim. Accordingly, sufficient evidence was presented to support Smith's convictions of CSC-I under MCL 750.520b(1)(b)(*i*).

## B. PROSECUTORIAL ERROR

Smith next argues that the prosecutor erred by vouching for the victim's credibility and by telling the jurors that they were required to believe only one side. We disagree.

Smith failed to preserve this claim of prosecutorial error because he did not raise a contemporaneous objection or request a curative instruction at trial. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Generally, we review de novo claims of prosecutorial error and review for clear error a trial court's factual findings. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). However, because Smith did not preserve this issue, we review the issue for plain error. *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). To establish plain error, a defendant must show that "1) [the] error . . . occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To show that an error affected substantial rights, a defendant must prove "that the error affected the outcome of the lower court proceedings." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when the error seriously affected the fairness, integrity or public reputation of judicial proceedings . . . ." *Id*. (quotation marks, brackets, and citation omitted). We will not find error requiring reversal when a curative instruction could have alleviated any prejudicial effect. *Bennett*, 290 Mich App at 476.

"The test for prosecutorial [error] is whether the defendant was denied a fair and impartial trial." *Brown*, 279 Mich App at 134. The defendant bears the burden of establishing that injustice resulted from the prosecutor's alleged errors. *Id*. When reviewing a claim of prosecutorial error, we consider the prosecutor's comments in context and evaluate each claim on a case-by-case basis. *People v Mann*, 288 Mich App 114, 119; 792 NW2d 53 (2010).

Smith argues that the prosecutor improperly vouched for the victim's credibility when she stated the following regarding the victim's trial testimony during closing argument:

> [W]e talked about his body language . . . and how he acts in court. And you all got to see that. I suggest to you that there's nothing about his behavior in court that suggests that he was telling a lie. We also talked about, does he have motive to lie.

> \* \* \*

> I submit to you, he does not.

After further discussing the trial testimony, and pointing out how Smith's testimony directly contradicted the testimony of the victim and the testimony of Jonnathan Meade, the Child Protective Services (CPS) caseworker who interviewed both Smith and Lee, the prosecutor went

-5-

on to tell the jury that "you get to decide, who's telling the truth; [the victim] and the [CPS] [w]orker, or [Smith]?"

Although a prosecutor may not vouch for the credibility of a witness by implying that he or she has special knowledge of the truthfulness of the witness, "a prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witness the jury believes." *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). Two of the prosecution's witnesses, Meade and the victim, testified that Smith had sexual intercourse with the victim on two separate occasions. Conversely, Smith testified that he never had sexual intercourse with the victim. Smith's guilt depended on whether the jury believed Smith's testimony or the testimony of Meade and the victim. Considering the context, the prosecutor was not suggesting that she had some special knowledge of the victim's truthfulness, and it was not improper for the prosecutor to point out that the jury had to decide whose testimony to believe or to argue that the victim had no motive to lie. See *Thomas*, 260 Mich App at 455. Given the responsive nature of the prosecutor's remarks, Smith has not shown that prosecutorial error occurred.

Moreover, Smith cannot satisfy his burden of showing that the prosecutor's comments resulted in a miscarriage of justice. See *Brown*, 279 Mich App at 134. The trial court instructed the jury that the attorneys' arguments were not evidence, and we presume that juries follow their instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Further, even if the prosecutor's closing arguments were prejudicial, a contemporaneous objection and a curative instruction could have alleviated any undue prejudice. See *Bennett*, 290 Mich App at 476.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, Smith argues that his defense counsel was ineffective for failing to object to the aforementioned portions of the prosecutor's closing argument. Smith further argues that he was prejudiced by defense counsel's failure to object because "[h]ad proper objections been made, and the jury had been advised to disregard the offending comments, [Smith] would have had a reasonably likely chance of acquittal." We disagree.

"Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). Smith failed to preserve his claim of ineffective assistance of counsel by moving for a new trial or requesting a hearing pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973), in the trial court. *Id*. at 188. Accordingly, our review of Smith's claim is limited to mistakes apparent on the lower court record. *Id*.

To establish a claim of ineffective assistance, a defendant must show that "(1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome of the defendant's trial would have been different." *Solloway*, 316 Mich App at 188. As discussed earlier in this opinion, the prosecutor's remarks during her closing argument did not amount to prosecutorial error. Therefore, any objection by defense counsel would have been futile. Failure to raise a futile objection does not amount to ineffective assistance of counsel. *People v*

-6-

*Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Smith's claim of ineffective assistance of counsel is therefore without merit.

Lee's conviction and sentence is vacated in Docket No. 334308, and Smith's convictions and sentences are affirmed in Docket No. 334626.

/s/ Elizabeth L. Gleicher
/s/ Michael F. Gadola
/s/ Colleen A. O'Brien